## M'MILLAN against BIRCH.

### IN ERROR.

1806.

Pittsburg,
Saturday,
September
13th.

To call a
clergyman a
*drunkard* is
actionable.
Words spo-
ken by the
defendant of
and to the
plaintiff be-
fore a church
Presbytery,
in the course
of his de-
fence against
charges
there
brought
against him
by the plain-
tiff, are not
actionable, if
he does not
wander
designedly
from the
point in
question, for
the purpose
of uttering
them.
*Qu.* Whether
being refus-
ed admission
into a Pres-
bytery is
such special
damage as
the law will
take notice
of.

THIS cause came before the court by writ of error from the Circuit Court of *Washington* county.

It was an action of slander brought by *Birch* against *M'Millan*, for calling him " a liar, a drunkard, and a preacher of the devil." The declaration stated that the plaintiff was " a man " of learning, integrity, and piety, and that for twenty eight " years last past he had been and then was a minister of the " gospel in the Presbyterian church, and had taken upon him- " self the orders of the same." It also laid a special damage in consequence of the slander, viz. that the plaintiff was refused -admission into the Presbytery of *Huntingdon* as a member. Pleas, not guilty, act of limitation, and justification.

It was proved at the trial of the cause, that the plaintiff was a Presbyterian minister, regularly ordained in *Ireland;* that he came to the *United States* in 1798, and on producing his credentials to the standing committee of the Presbyterian church in *Philadelphia*, was permitted to preach there; that he afterwards came with his family to *Washington* county; that upon an application made to the *Ohio* Presbytery, he was rejected for want of *experimental knowledge;* and that he appealed from their sentence to the General Assembly, who, after examining and considering the case, did not pass any censure on the *Ohio* Presbytery, but determined that they found no ground why any Presbytery should not take the plaintiff up, and proceed with him agreeably to the rules and regulations in such cases provided.

The plaintiff afterwards cited the defendant, who was also a clergyman, before the Presbytery of *Ohio*, to answer for slander and for unchristian threatenings. The defendant appeared and was heard in his defence. The Presbytery acquitted the defendant of the charges brought against him, except for calling the plaintiff " a preacher of the devil," for which they reprimanded the defendant, and he submitted. The plaintiff appealed again to the General Assembly; but apprehending that he should not obtain a favourable decision, in consequence of his having

committed some irregularities in *Washington* county, by administering the sacrament and ordaining elders, in violation of the rules of the church, he gave up his appeal, and withdrew from the jurisdiction of the General Assembly; after which the Assembly determined that they would have nothing more to do with him, and that he never had been in union with the Presbyterian church in the *United State* , so as to be authorized to preach as one of their ministers.

The plaintiff proved also as laid in the declaration, that he failed in his application for admission into the Presbytery of *Huntingdon.*

The words laid in the declaration, or some of them, were spoken of and to the plaintiff in the Presbytery of *Ohio*, while the defendant was making his defence against the plaintiff's charge.

The cause was heard before Judges YEATES and SMITH, in *October* 1804; and the counsel for the defendant, among other things objected 1st, that the action could not be maintained by the plaintiff for words spoken of him in his profession of a minister of the Presbyterian church, because the evidence shewed that he did not hold that office; and 2dly, that words spoken by the defendant in Presbytery, while making his defence against the plaintiff's charge, were not actionable. Upon both points the court charged for the plaintiff, and sealed a bill of exceptions. The jury found for the plaintiff.

*Ross* and *Addison* for the plaintiff in error, made four points: 1st, that the plaintiff below stated in his declaration that he had been twenty eight years a clergyman of the Presbyterian church, and was so then. But it was proved that he never was a clergyman of that church in the *United States;* therefore he failed in supporting his action. 2d, That the words laid were not actionable, if spoken of a person not a clergyman. 3d, That the special damage laid was not of a civil but ecclesiastical nature, which the law would not notice. 4th, That the words spoken by the defendant in his defence before the Presbytery, were not actionable.

1. The plaintiff must prove his case as it is laid in his declaration, and should have shewn that he was a clergyman of the Presbyterian church at the time the words were spoken. *Collis*

1806.

M'MIL-
LAN
*v.*
BIRCH.

v. *Malin.* (a) If a barrister bring an action for words which are a disgrace to him in his profession, he must aver that at the time of publishing them he was a practising lawyer. He must aver that he was " *homo conciliarius in lege;*" " *homo eruditus*" will not do. 6 *Bac. Abr.* (*Gwill.*) 216. 218. 219. 1 *Com. Dig.* 276. The principle upon which these and all the cases upon the same point proceed, is this, that the words being actionable only as they are spoken of persons in a particular trade or profession, it must be shewn that the plaintiff was of that trade or profession at the time of the words spoken, or the very essence of the action is wanting. We have in this case the highest authority of the Presbyterian church for saying that the plaintiff never has been a minister of that church in the *United States.* His having been so in Ireland, according to *Collis* v. *Malin* will not answer. It was there laid that the plaintiff had used *per magnum tempus* the trade of buying and selling &c; but because it was not stated that he used it at the time the words were spoken, it was adjudged for the defendant.

2. No charge of a general misfeasance is actionable, unless the words are applied to the trade or calling. 1 *Com. Dig.* 268, 9. *Stanhope* v. *Blith* (b), *Savile* v. *Jardine* (c). In order to make words actionable, they either must contain an express imputation of some crime liable to punishment, some capital offence or other infamous crime or misdemeanor, or they must be spoken of one in an office of profit, which may probably occasion the loss of his office, or of persons touching their respective professions trades and business, and do or may probably tend to their damage. *Onslow* v. *Horne.* (d) The words " liar and drunkard" may be used with impunity; they are expressions of anger, and not of malice. 3 *Bl. Comm.* 124. *note 5 Chr.* And as to the phrase " preacher of the Devil," it certainly is no worse than " brazen faced Belzebub," or " Devil," or " prince of darkness," which are not suable, because they import passion, but no crime or discredit. *Smith* v. *Wood.* (e) The rule in *Smale* v. *Hammon,* (f) that where the words spoken tend to the disgrace infamy or discredit of the party, they are actionable, has been repeatedly overruled. *Holt* v. *Schoffield.* (g)

(a) *Cro. Car.* 282.
(b) 4 *Rep.* 15.
(c) 2 *H. Bl.* 531.
(d) 3 *Wils.* 186.

(e) 2 *Salk.* 692.
(f) 1 *Bulstr.* 40.
(g) 6 *D. & E.* 693.

3. This point was not made at the trial. If the words are not actionable in themselves, this kind of damage cannot make them so. The law has no measure for it; it is arbitrary to the last degree. It is an injury purely ecclesiastical; for the Presbytery has no salary, no living, no preferment; and if the plaintiff could not gain admission in one place, he might have gone to another. The special damage must be of a temporal nature; and so it is universally laid.

4. The plaintiff complained to the Presbytery of the words laid in the declaration; and at his instance the defendant appeared and went into his defence. If he had travelled out of his case to slander the plaintiff, it is unnecessary to say what the law would be; but it was in the very matter charged that the words were used, and they were therefore justifiable from the occasion of using them. The original words are out of the question; they were barred by the statute. There is no head of the law in which the cases are more uniform than in this; and they turn upon a principle which at once favours the peace of society, and the security of the individual; that where there is a proper occasion for speaking the words, the law will not imply malice even from their falsehood. It is on this ground that a servant cannot maintain an action against his former master, for words spoken in giving his character, unless he prove both malice and falsehood; even though the master make specific charges of fraud. *Weatherston* v. *Hawkins.* (a) In a court of justice it is essential that the defendant be allowed to speak freely in his defence; and where a charge or recrimination is made by him upon the point in question, an action will not lie. It was thus ruled, where the defendant by his affidavit exhibited in court, alleged that the plaintiff had *sworn falsely.* *Astly* v. *Young.* (b) The same of words spoken before a justice of the peace, upon a question of binding to good behaviour. *Cutler* v. *Dixon.* (c) So of a bill exhibited to the Starchamber, which is not a court of record, provided the court had jurisdiction of the matter. *Buckley* v. *Wood.* (d) And so where in a suit in the spiritual court, the defendant put in an exception to a witness, *that he was perjured;* because said the court, it is in the course of justice, and not *ex malitia.* *Weston* v. *Dobniel.* (e) The law extends the privilege

(a) 1 D. & E. 110.  (c) 4 Rep. 14 b.  (e) Cro. Jac. 432.
(b) 2 Burr. 807.  (d) Cro. Eliz. 230. 218.

1806.

M‘MIL-
LAN
v.
BIRCH.

to the counsel of a party, who may justify even a charge of felony, as being spoken in the legal and necessary exercise of his profession. *Brook* v. *Montague.* (*a*) Now that this matter was before a competent tribunal cannot be disputed. It does not indeed proceed by temporal punishment, but it had in this instance a jurisdiction by consent, both parties having appeared; and it might severely have punished the defendant, by expelling him from the church. The rights of conscience and of public worship are protected by the constitution; and with the latter is inseparably connected the discipline of the church. To deny the Presbytery the right of investigating complaints which affect a member, is to overthrow their discipline, and with it many of the interests of religion which discipline sustains. The Court of King's Bench has indirectly supported the discipline of Friends. *King* v. *Hart.* (*b*) It is of public convenience.

*Mountain* for the defendant in error contended that whether the plaintiff below was or was not a minister, to call him a *drunkard* was actionable in *Pennsylvania.* Drunkenness is not only immoral, but it subjects the party to temporal punishment. It is not a charge of so general a nature as to be of no effect for want of precision; but it specifically fixes upon the individual an offence against the law, which subjects him to a fine, or in case of his inability to pay it, to imprisonment in the house of correction. Many of the modern cases have been, to use Lord *Holt's* expression, too learned on this point. His own rule contains the sense of the best authorities, and certainly contributes most to the public good; " Where words tend to " slander a man," said he, " or to take away his reputation, I " shall be for supporting actions for them, because it tends to " preserve the public peace;" and the doctrine was adopted by the court. *Baker* v. *Pierce* (*c*), *Harrison* v. *Thornbury* (*d*).

But at all events the words are actionable when spoken of a clergyman. They necessarily destroy his influence; they take from him his hearers; and they deprive him thereby of his subsistence. There is a case in *Alleyn* 63. *Dodd* v. *Robinson*, precisely in point, that an action lies for calling a clergyman a drunkard. 6 *Bac. Abr.* 215. It is the same as to call a physician

(*a*) *Cro. Jac.* 90. 6 *Bac. Abr.* 224.          (*c*) 2 *Lord Ray.* 960.
(*b*) 1 *Wm. Bl.* 386.          (*d*) *Gilb. Rep. in R. B.* 117.

a quack, or a lawyer a knave. So to charge a clergyman with incontinence. *Hartly* v. *Herrings.* (a) The only question then is, whether the plaintiff was a clergyman at the time the words were spoken; and of this there can be no doubt. He is not stated to have been a minister in communion with the Presbyterian church in the *United States*, but simply a minister of the gospel in the Presbyterian church. He was ordained in that church in *Ireland;* he was received by the Presbytery in *Philadelphia*, and permitted to preach by the standing committee; and he accordingly supported himself by the exercise of that office. The very reception in this state recognised the ordination in *Ireland;* and whether it did or not, this court, having proof of a regular ordination abroad, and of a continuance in the exercise of the clerical office here, would be bound to consider him as a clergyman of that church in which he was ordained. A minister of a certain church remains so until he abandons it, or is deprived for misbehaviour.

The rejection from the *Huntingdon* Presbytery was not merely an ecclesiastical loss. It deprived him of an opportunity to receive a call from a parish in communion with the church in *America*. It is one part of a clergyman's preferment, which the law so far considers of a temporal nature, as it naturally leads to temporal good.

If words spoken colourably by a party in his defence are not actionable, suits at law will become instruments of defamation: and certainly it is a mere colour of defence, to reiterate slander, as was done in this case, under the pretence of justifying it. As it respects courts of justice in *England*, the rule has however been settled to a certain extent, and cannot be questioned. But it is uniformly stated to apply exclusively to cases " *in the course of justice;*" and nothing is more clear than that the course of justice lies only through Courts established by the law of the land. The spiritual court has in that kingdom very extensive authority over both person and property, and therefore stands upon the same footing in this respect with the other courts of the realm. But the Presbytery is not even known to the law; it exists and acts by consent. A proceeding before that body is no more in the course of justice, than if it were before any self-created society whatsoever. Their rules have no contact with the

(a) 8 *D. & E.* 130.

1806.

M'MIL-
LAN
v.
BIRCH.

laws of the land; and although they may regulate the discipline of many churches, the law must be the same as though they governed but one. If a defendant can justify words because uttered in his defence before such a body, he may do it if uttered before any body of men sitting upon the question, any where, and under all circumstances.

TILGHMAN C. J. after stating the facts, delivered his opinion as follows:

The bill of exceptions contains two points: 1. That upon the evidence given, the action could not be maintained by the plaintiff, for words spoken of him in his profession of a minister of the Presbyterian church. 2. That the words spoken by the defendant, while making his defence before the *Ohio* Presbytery, against the charge exhibited against him by the plaintiff for slander, were not actionable. On both these points the court charged in favour of the plaintiff.

In arguing the cause before us, the counsel for the plaintiff in error made four points which it will be necessary to consider. 1. That the words spoken are not actionable, applied to persons in general. 2. That they are not actionable when applied to the plaintiff on the evidence in this cause. 3. That exclusion from the *Huntingdon* Presbytery is no temporal damage, nor such as the law will take any notice of, or suffer damages to be recovered for. 4. That the words spoken by the defendant in his defence before the *Ohio* Presbytery are not actionable.

First and second. Whether the words are actionable applied to persons in general, I think it unnecessary to decide, because I am clearly of opinion they are actionable as applied to the plaintiff. The reason why certain expressions are actionable when applied to persons of certain professions is this: that from the *nature* of the case it is evident that damage must ensue. To say of a merchant that he is a bankrupt, or of a lawyer that he is a knave, must, if believed, necessarily produce damage. So to say of a clergyman that he is a *drunkard;* because these words if believed, must deprive him of that respect, veneration, and confidence, without which he can expect no hearers as a minister of the gospel. Express authority has been produced to shew that these words are actionable, spoken of a clergyman in *England.* The defendant's counsel do not say that the character of a clergyman is less sacred or less worthy of protection here, than

in *England*; but they object, that inasmuch as the plaintiff was never admitted to the rights of a Presbyterian clergyman in the *United States*, he has failed in proving his case as stated in his *Narr*. But in answer to this it is to be remarked, that he has not said he was a minister of the Presbyterian church in the *United States*; he only says in general that he was a minister of that church, and so he undoubtedly was; for he was ordained in *Ireland*, and was never degraded from holy orders. He was what the Presbyteries and General Assembly in the *United States* call a *foreign minister*; and in that capacity he might, if he thought proper, preach and receive money for preaching, from any that chose to pay him, without the consent of any Assembly or Presbytery. Or if he proceeded in a regular way, and obtained their consent, no *new ordination* would have been necessary; which is an incontestible proof that the church here recognises an ordination in *Ireland*, as investing a clergyman completely with the order of the ministry. The plaintiff therefore was a minister of the Presbyterian church; and the words spoken of him, if believed, must necessarily preclude him from any employment, whereby he might obtain a living in the *American* church.

Third. This point is not mentioned in the bill of exceptions. No objection was made to the charge of the court in this respect. I think it therefore immaterial. There can be no error in the record, on account of special damages, because the words are actionable in themselves, and the law implies damage. Even supposing for argument's sake that the loss of admission into a Presbytery was not a matter for which damages could be recovered, (which be it remembered I by no means assert) it would be unwarrantable to suppose after a verdict, that the jury had given damages on that account. Courts are always disposed to support, and not to destroy, the verdicts of juries.

Fourth. I come now to the last point, the only one which is attended with any difficulty. It was raised suddenly in the course of the trial; it was new; and the judges who tried the cause, and who were obliged to declare their opinions in a short time, delivered the impression of their minds, not without doubt. I have given it the attentive consideration that it merits; and though I cannot but feel diffidence when I disagree with the respectable and learned gentlemen before whom the trial was had, I will proceed to offer my reasons for thinking that

1806.

M·Mil-
lan
v.
Birch.

the words spoken by the defendant, when making his defence before the Presbytery, are not actionable.

I consider *malice* as an essential ingredient in slander. If I say of a man that he is a thief, or that he committed murder, the law implies malice in general; and it lies on me to shew that there was no malice in my heart. This I may do in various ways. I may shew that I used this expression when examined as a witness in a court of justice; or when I was concerned in a prosecution, as attorney for the Commonwealth; and although I was mistaken in the fact, no action lies. The occasion of my speaking being called upon by others, and only acting in the course of my duty, preclude the idea of malice. So what is said by myself or my attornies in my defence in a court of justice is not actionable; not only because of the occasion of my speaking, but also because the public good requires that every man should be allowed to speak freely in his own defence. It is the same with regard to what I say as plaintiff in an action; because there is as much reason why persons should enjoy freedom of *complaint*, as freedom of *defence*. But if any man should abuse this privilege, and under pretence of pleading his cause, wander *designedly* from the point in question, and maliciously heap slander upon his adversary, I will not say that he is not responsible in an action at law.

This freedom of speech in what is called a *course of justice*, is not confined to courts of *common law*. Cases have been cited to shew that it is extended to proceedings in ecclesiastical courts, and proceedings before justices of the peace; and I have no doubt but it should likewise be extended to proceedings before referees.

The objection in the case before us is, that Presbyteries and General Assemblies are not courts of justice. Certainly they are not; and depositions taken before them are no evidence in courts of justice, because they have no authority to administer an oath; and a person swearing falsely could not be indicted for perjury. But although they are not courts of justice, they are bodies enjoying certain rights, established by long custom, and not forbidden by any law. They can inflict no temporal punishment; and their jurisdiction is founded on the consent of the members of the church. No extensive church can preserve decency, good order, or purity of manners, without discipline. It serves to correct a multitude of evils, which cannot and ought

not to be subject to temporal cognisance. It corrects them too in a manner the most mild, the most private, and the least scandalous and injurious to religion; in a manner that may reform the offender, without exposing him to the open scorn and ridicule of the world; circumstances which sometimes render men desperate. A jurisdiction of this kind, exercised only over those who consent to it, certainly must be productive of good effects; and it appears to me that the persons thus consenting and pleading their causes either in a course of *complaint* or *defence*, fall within the principle applied to those who are speaking in courts of justice. If they conduct themselves in a decent manner, the occasion of speaking makes it improper that the law should imply malice. I repeat the remark made before, that if under a pretence of pleading a cause before a Presbytery, one should designedly and maliciously wander from the point and slander his opponent, he would be responsible for his conduct in a court of justice.

Let us apply these principles to the case before us. It was the plaintiff who first affirmed the jurisdiction of the Presbytery, and cited the defendant to answer before it. The defendant did not decline the jurisdiction. What then was he to do? He must either confess that the words he had spoken of the plaintiff were false, which if he believed them to be true would be a great crime, or by acknowledging that he had spoken them, and endeavouring to justify them, render himself liable to an action in a court of law, which had been barred by the act of limitation; for this is the consequence, if words spoken there are actionable. Would these words have been spoken at that time, if the plaintiff had not extorted them? And after extorting them, shall he apply to a temporal court for damages? If the law is so, will not ecclesiastical jurisdictions prove traps for the unwary? May not the occasion of the defendant's speaking be fairly and candidly said to warrant the conclusion, that he spoke not through malice, but in his own defence; or at least, ought it not to form an exception from the general rule by which the law *implies* malice? The subject suggests a multitude of reflections; but I have said enough to explain the principles on which my opinion is founded. Whether the defendant will derive any advantage from it I know not; for it is very possible that on a new trial there may be sufficient evidence to establish the plaintiff's action, independent of what passed before the

1806.

M‘MIL-
LAN
*v.*
BIRCH.

Presbytery. It is very possible that the verdict already given, would have been the same if the court had charged on this point, according to the defendant's wishes. But be that as it may, he is entitled to the benefit of his exception. I am of opinion that the charge of the Circuit Court was erroneous, in the last point mentioned in the bill of exceptions; and therefore the judgment must be revers ed.

BRACKENRIDGE J. concurred.

Judgment reversed.