## LAWSON vs. HICKS.

[ACTION FOR DEFAMATION.]

1. *When action lies for words used in judicial proceeding.*—Words, spoken or written, in the course of a judicial proceeding, by the court, the parties, or the counsel, if relevant, will not support an action for defamation; nor when irrelevant, if the speaker or writer believed that they were relevant, and had reasonable or probable cause so to believe; nor in any case, without proof of actual malice.

2. *Averment of want of probable cause.*—An averment that the alleged defamatory words were irrelevant, and were used "without justifiable cause or excuse," is not equivalent to an allegation of the want of probable or reasonable cause.

3. *What is available defense under general issue.*—Where the alleged defamatory words were contained in cross-interrogatories propounded to a witness in a former suit between the parties, it is a good defense under the general issue, that the defendant propounded the interrogatories for the purpose of laying a predicate to impeach the witness, and honestly believed that he had the right so to do.

4. *Error without injury in sustaining demurrer to special plea.*—The sustaining of a demurrer to a good special plea, when the defendant had the benefit of the same defense under the general issue, is error without injury.

5. *Proof of relevancy.*—The mere fact that a deposition, taken on interrogatories and cross-interrogatories, was read in evidence on the trial, does not justify the conclusion, as matter of law, that the cross-interrogatories called for relevant matter.

6. *Proof of publication.*—The fact that the cross-interrogatories to a witness, which contained the alleged defamatory words, signed by the defendant, and in his handwriting, were found in the clerk's office, tends to show a publication by him, and may go to the jury as evidence of publication.

7. *Relevancy of evidence to impeach witness, and disprove declaration of party.*—Where a witness testifies to a declaration made by a party in conversation with him, the party cannot be allowed, for the purpose of impeaching the witness, and rebutting his testimony, to prove by another witness, who had known him intimately for a number of years, that he had never made any such declaration to him.

APPEAL from the Circuit Court of Macon.
Tried before the Hon. NAT. COOK.

THIS action was brought by Henry H. Hicks, against John R. Lawson, to recover damages for defamatory words

written and published by the defendant, of and concerning the plaintiff, in filing cross-interrogatories to one Lamb, whose deposition was taken by the plaintiff in a former action of trespass instituted by him; against the defendant. All the alleged defamatory words: were contained in the sixth cross-interrogatory, which was as follows: "*If, in answer to the direct interrogatories, you should state that you heard defendant say anything about hogs, or upon the subject of Hicks, state fully, and whether defendant said anything about the hog that Hicks was found in possession of, belonging to the defendant, and, when he was caught with the hog, pretended that he had bought the hog of Thomas Hazard; but that Hazard, unlike the negro for the sake of the credubility (?) of his young mistress, refused to take it upon himself. If any thing on the subject of Hicks, state whether defendant said any thing about the cotton that Cary said Hicks stole, or about the charge of theft by Cook against Hicks; anything about the money belonging to Dr. Battle, which Hicks tried to hold in his weasel, under the pretense that it was burned in his house by the Indians; but that Dr. Battle, never dreaming that Hicks was so indifferent about money as to leave it purposely in his house to be burned by the Indians, made Hicks fork it over;* anything about Hicks being shot at by the Indians about the same time, and the ball passing so close to his mouth that it knocked out two of his front teeth, and that he placed them back with his fingers, and they grew fast again; *anything about Hicks having worn some of Allen Ashburn's old clothes, (an old deceased character; having ———— , or something worse,) having taken the clothes for Ashburn's board, and having subsequently sworn upon the stand, in the town of Tuskegee, in one of the courts of justice, that he never charged anything for board, but that Ashburn and Cox had complimented him with a little something. (Wonder if that 'little something' was old clothes?) Anything about Hicks having attempted to assassinate defendant, at defendant's own house, in the night-time, by trying to shoot defendant through the window while he was lying on his bed; anything about the Evans' having said that Hicks, about the time of his early set-*

tlement in Macon county,. murdered one of his negroes, after taking him out of jail, before he got him home ; anything about the Indians that Hicks boasted of having charged his horse on, and sinking him in a mud-hole ; *anything about what some of Hicks' neighbors say about the miraculous disappearance of a little boy that was living with Hicks, by the name of Fair, after some difficulty between the lad and Hicks, and that nothing had ever since been seen or heard of the lad, except that some persons found his hat in Conecuh swamp ;* anything about Hicks mounting the gate-post, and crowing every time he heard one of Parson Moulton's Shanghai chickens crow; anything about Blackman having said, that Hicks told him, on the way from Tuskegee, that he would whip defendant, if he had not a wife, before he lett town that day. Keep the peace, and declare fully."

The amended complaint was in the following words : "Plaintiff claims of defendant the sum of twenty thousand dollars, as damages for falsely and maliciously publishing of and concerning him,. the said plaintift, in some cross-interrogatories filed by said defendant, in his own hand-writing, in a case pending in the circuit court of Macon county, in which the said plaintift in this suit was plaintiff, and the said defendant was defendant, to one J. K. Lamb, a witness to whom interrogatories had been filed by the said plaintiff, among other false matters,. the following false, scandalous, and defamatory matter, with the intent to defame the said plaintiff;. that is to say, the said defendant, in crossing the said interrogatories to the said witness Lamb, did falsely, maliciously, and with the intent to defame the said plaintift, write and publish to the said witness, J. K. Lamb,. among other matter, the false, scandalous, malicious, and defamatory words following," &c., setting out the italicized portions of the interrogatory above copied. "And the said plaintiff avers, that by asking the said questions of the said witness, and by writing down and publishing the same, the said defendant meant and intended falsely and maliciously to charge the said plaintiff with the several crimes therein named or indicated, and to hold plaintiff up

to scandal and disgrace, and was so understood; and the said plaintiff further avers, that said matters above alleged are false and defamatory, and were wholly irrelevant and improper, impertinent and immaterial to the issue joined between the parties to said suit, and were improper, false, and malicious, and were inserted, written, and put in said cross-interrogatories without justifiable cause or excuse, and with the intent on the part of said defendant to defame the said plaintiff."

The defendant demurred to the amended complaint, and assigned as grounds of demurrer "all the causes of demurrer which could be specifically assigned thereto, and to each count thereof." The court overruled the demurrer, and held the complaint sufficient; and the defendant then filed the following special pleas:

"1. *Actio non*, because he says that the said several matters stated and set forth in the several counts in said complaint, are parts of one and the same paper writing, and none other; and that the said paper writing consisted of cross-interrogatories propounded to one J. K. Lamb, as a witness, in a cause then pending in the circuit court of Macon county, between the said Henry H. Hicks as plaintiff, and this defendant as defendant; to which said witness the plaintiff had propounded interrogatories in chief, and filed the same in said circuit court, according to the regular practice of said court, to take the deposition of said witness, to be used as evidence in said cause then pending in said court, (of which cause said court had full and ample jurisdiction,) and caused notice of the filing of said interrogatories to be served on this defendant, who appeared in person in said cause, and defended himself; and that this defendant, in the regular course of practice in said court, as a means of testing the memory of said witness, and as a predicate for laying a foundation to impeach him, and for the further purpose of disproving malice on the part of this defendant, by proof of his making no allusion to the various reports and circumstances inquired about in the said several cross-interrogatories, and honestly and in good faith

believing that he had the right to file and exhibit said cross-interrogatories, propounded said cross-interrogatories to said witness, and filed the same with the papers of said cause, to accompany the interrogatories in chief, with the commission, to take the deposition of said witness; which said cross-interrogatories did accompany said interrogatories in chief and said commission, and were propounded to the said witness; and the same, with the answers thereto of said witness, as well as the answers to the interrogatories in chief, were returned to said circuit court by the commissioner in said commission named, and the same were read and used as evidence on the trial of said cause, in the regular course of the legal proceedings; and this defendant avers, that he did not otherwise, in any manner whatever, utter or publish the supposed matter stated in said several counts to be libellous; and this he is ready to verify," &c.

"2. *Actio non*, because he says that the said several matters stated and set forth in plaintiff's said complaint as libellous, are parts of one entire paper writing, being cross-interrogatories propounded to one J. K. Lamb, a witness examined by the said plaintiff in a cause then pending in said circuit court of Macon county, wherein said plaintiff was plaintiff, and this defendant was defendant, and of which cause said court had full and legal jurisdiction; which paper writing was filed in said cause, and comprised a part of the regular proceedings in said cause, and was filed in the regular course of practice and judicial proceedings in said cause, and the same was not otherwise composed or published by this defendant in any manner whatever; and this defendant avers, that the deposition of said witness, taken in answer to said interrogatories and cross-interrogatories, was read and used on the trial of said cause, and formed a part of the regular judicial proceedings in said cause; and this he is ready to verify," &c.

"3. *Actio non*, because he says, that the said several matters set forth in plaintiff's complaint as libellous, grew out of, and formed a part of a regular judicial proceeding, in a

certain cause then pending in said circuit court of Macon county, wherein said Hicks was plaintiff, and this defendant was defendant; and the said matters in said several counts charged as libellous, were not otherwise composed or published; and this the said defendant is ready to verify," &c.

The court sustained a demurrer to each of these pleas, and issue was then joined on the plea of not guilty. On the trial, as appears from the bill of exceptions, the plaintiff read in evidence the record of the suit in which Lamb's deposition was taken, " and proved, that he filed direct interrogatories to said Lamb, as a witness for him in said cause, and served them on the defendant; and that a short time thereafter, in March, 1856, a set of cross-interrogatories to said witness was found in the office of the circuit clerk, with the name of the defendant signed to them; but there was no other evidence that the defendant placed them there, or that the cross-interrogatories, or the name signed to them, was in the handwriting of the defendant; and the only evidence of the publication of said cross-interrogatories was as above set forth." The defendant objected to the reading of the cross-interrogatories as evidence; but the court overruled his objection, and allowed them to be read to the jury; to which the defendant reserved an exception. In the further progress of the trial, the defendant introduced one Ramsey as a witness, " who testified, that in the latter part of 1854, while he and Hicks were trading in horses, Hicks told him that he and others had shot at Lawson's house at night. To rebut this evidence, and to impeach the credit of said Ramsey, plaintiff offered to prove, by a witness named Thompson, that they had been intimate with each other for fifteen years, and that plaintiff had never told him that he had shot at Lawson's house." The court admitted this evidence, against the defendant's objection, and the defendant excepted.

The rulings of the court on the pleadings and evidence, as above stated, with other matters, are now assigned as error.

W. P. CHILTON, and S. F. RICE, for appellant.
GUNN & STRANGE, contra.

A. J. WALKER, C. J.—Words, calumnious in their nature, may be deprived of their actionable quality by the occasion of their utterance or publication. When this is the case, they are called in the law of defamation privileged communications. These communications are either absolutely or conditionally privileged. When they are absolutely privileged, the law affords conclusive and indisputable immunity from suit. When they are conditionally privileged, the law simply withdraws the legal inference of malice, and gives a protection upon the condition, that actual malice, or express malice, or malice in fact, (as the same idea is variously phrased,) is not shown. The distinction between the two classes is, that the protection of the former class is not at all dependent upon their *bona fides;* while the latter is merely freed from the legal imputation of malice, and become actionable only by virtue of the existence of express malice.—Cooke on Defamation, 28, 31, 60; Starkie on Slander, 229, 292. This latter class comprehends all those cases, "where the author of the alleged mischief acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform."—Starkie on Slander, 292; Cooke on Defamation, 31; *Toogood v. Spyring,* 1 Cr., M. & Ros. 181; *Easly v. Moss,* 9 Ala. 266; *Stallings v. Newman,* 26 Ala. 266.

To the catalogue of absolutely privileged communications belong all words spoken or written by the court, the parties, or the counsel, in the due course of judicial proceedings, *which may be relevant.* The *relevancy,* or *pertinency,* of the calumnious matter is indispensable to its perfect and absolute freedom from all actionable quality; and being relevant, it can give rise to no civil responsibility, no matter how great the malignity or malice from which it may have originated. Some obscure expressions may

be found in the English Reports, from which ingenuity might extort an argument, that communications in the course of judicial proceedings were absolutely privileged, so far as a subsequent action might be concerned, without regard to their pertinency. As an example of such expressions, we may instance the following remark of Lord Mansfield: "There can be no scandal, if the allegation is material; and if it is not, the court before whom the indignity is committed, by immaterial scandal, may order satisfaction, and expunge it out of the record, if it be upon record."—*Astley v. Young*, 2 Burr. 807. See, also, the remarks of Chancellor Walworth upon several cases, in *Hastings v. Lusk*, 22 Wend. 410. We apprehend, that the remark quoted, if defensible at all in its full extent, was intended merely to suggest a large authority in the court before which the scandal was committed, and not to deny that irrelevant words, uttered with actual malice, might become the basis of a subsequent action.

The law designs, in the adoption of the principle above stated, to relieve those participating in the proceedings of courts of justice from the restraint which might result from the apprehension of lawsuits. The accomplishment of that object does not require that the privilege of absolute exemption should be extended further than to relevant communications. A further extension would license malignity to pervert judicial proceedings to the accomplishment of its wicked purposes. The avoidance of such a consequence is scarcely less important than the guarding of the unembarrassed freedom of judicial investigation. Accordingly, we find numerous and conclusive authorities, which, in the clearest manner, put the qualification, that only those communications, occurring in the course of judicial proceedings, are absolutely privileged, which are relevant.—*Brook v. Montague,* 2 Cro. Jac. 90; *Hodgson v. Scarlet,* 1 B. & Al. 232; *Flint v. Pike*, 4 B. & C. 473, 481; *Mower v. Watson*, 11 Verm. 536; *Suydam v. Moffat*, 1 Sandf. (S. C.) R. 459; *Warner v. Paine*, 2 Sandf. S. C. 195; *Lea v. White*, 4 Sneed, 111; *Ring v. Wheeler,*

7 Cow. 725; *Gilbert v. People*, 1 Denio, 41; *Garr v. Selden*, 4 Coms. 91; *Fairman v. Ives*, 5 B. & Ald. 642.

If the communications be irrelevant, they do not necessarily became actionable. They must be malicious, as well as irrelevant. Because they were uttered in the course of judicial proceedings, the law does not draw the inference of malice from their injurious character, but requires from the complaining party proof of actual malice. The line which separates relevancy from irrelevancy to a legal controversy, is often extremely shadowy and indistinct; and the position of the counsel or parties, conducting a cause, would be full of peril, if the imputation of legal malice was incurred whenever, from ignorance of law, or frailty of judgment, criminatory remarks of an irrelevant character might be made. The communications of counsel and parties, made in the due course of a judicial proceeding, are, therefore, not only absolutely privileged when relevant, but can not constitute a cause of action, although irrelevant, unless they are in fact malicious.

Malice is usually inferred by law from the defamatory matter itself; and, when so inferred, it is denominated legal malice, in contra-distinction to malice in fact. Where this legal inference of malice is drawn, the absence of express malice is no justification, although it is to be considered in mitigation.—Cooke on Defamation, 28; Starkie on Slander, 213, 216, 456, m. p. 217, 218; *Shelton v. Simmons*, 12 Ala. 466; *Curtis v. Massey*, 6 Gray, 272. The inference of malice is not drawn as a matter of law, when the words are spoken or written, by parties or counsel, in the due course of judicial proceedings, although they may be irrelevant; and the plaintiff is compelled to base his recovery upon the existence of malice in fact. The question of malice becomes purely an inquiry for the jury; and they may consider the character and quality of the words, in determining the question of malice. The intrinsic effect of the words would argue to the jury the existence of express malice, with a force which would be increased by the obviousness of their irrelevancy, and the grossness of the

calumny, and might be lessened or destroyed by the ignorance of the defendant, or other pertinent circumstances. The entire question of malice is an inquiry of fact, to be determined by the jury, upon all the evidence pertinent, in the light of their reason; and they must give to the intrinsic force of the words themselves such weight upon the point at issue as it may seem to them to merit, when considered in connection with the other evidence.

For the purpose of supporting and illustrating our views, as to the principles which must govern when irrelevant expressions are used in the course of judicial proceedings, we proceed to note the positions of some legal authorities upon the subject. The words "relevancy or pertinency," in this class of cases, seem to be sometimes used by English authors indiscriminately with the phrase "probable or reasonable cause"; and Cooke, in his most excellent work on Defamation, (page 60,) says : " The pertinency of the matter to the occasion is, it is submitted, that which is meant by probable cause." Starkie, in his work on Slander, (p. 286,) doubts whether a recovery can be had against an advocate, for words spoken by him in a judicial controversy, and concludes that, at all events, such recovery can only be had in a special action, alleging express malice and the want of probable cause.—See, also, Cooke on Def. 62 ; 1 Amer. Leading Cases, 185 ; *Fairman v. Ives*, 5 B. & Al. 642 ; *Hodgson v. Scarlet*, 1 *ib.* 232. Holroyd, J., announcing his opinion in the case of *Flint v. Pike*, (4 B. & Cr. 481,) says : "And if a counsel, in the course of a cause, utter observations injurious to individuals, and not relevant to the matter in issue, it seems to me that he would not therefore be responsible to the party injured, in a common action for slander, but that it would be necessary to sue him in a special action on the case ; in which it must be alleged in the declaration, and proved at the trial, that the matter was spoken maliciously, and without reasonable cause." The learned judge furthermore assimilates such an action to a suit for malicious prosecution, in which it is necessary to aver want of probable cause and malice.—*Long v. Rodgers*, 19 Ala. 321 ; *Ewing v. Sanford*, 19 Ala. 605.

In the case of *Mower v. Watson*, (11 Verm. 536,) the court thus sums its conclusions on this subject from an elaborate examination of the authorities.  " If any one considers himself aggrieved, in order to sustain an action of slander, he must first show that the words spoken were not pertinent to the matter then in progress, and that they were spoken *maliciously* and *with a view to defame him*." There are several decisions in the New York Reports to the same effect.   Contenting ourselves with referring to the rest, we extract from *Suydam v. Moffatt*, (1 Sandf. S. C. R. 459,) the following statement of the law in reference to irrelevant matter published in a judicial proceeding: " Though the words in the declaration were not published on an occasion which forms an effectual shield to the defendant, whatever his motives may have been in using them; yet, in cases of this kind, the law does not impute malice to a party, from the mere fact of his having published the words.   The jury must be satisfied that there was actual malice on the part of the defendant, and that they were published for the mere purpose of defaming the plaintiff."—*Warner v. Paine*, 2 Sandf. S. C. R. 195; *Garr v. Selden*, 4 Coms. 91 ; *Ring v. Wheeler*, 7 Cow. 725; *Gilbert v. People*, 1 Denio, 41 ; *Hastings v. Lusk, supra*; also, *Lea v. White*, 4 Sneed, 111.

We think it is also a correct proposition in law, that a party or his representative is not amenable to an action, where, although the matter stated was impertinent, he believed that it was relevant, and had reasonable or probable cause so to believe.  Cooke, in his work on Defamation, (p. 62,) to which we have heretofore referred, says: "It seems that the parties, or their representatives, are entitled to state anything, which, although not strictly relevant, may be fairly supposed by them to weigh with the court." In the case of *Lea v. White, (supra,)* the matter alleged to be libellous consisted of a return to a writ of *habeas corpus;* and the court thus states the question, upon which the case turned, and the decision of the question : " Could the defendant have reasonably supposed it necessary to his de-

19

fense to return on the writ of *habeas corpus* the alleged libellous matter? We think that he might have reasonably supposed that the statement would have exerted an influence on the mind of the court; and this being so, he had a right to introduce it, and rely upon it in his defense." In *Hastings v. Lusk* and *Suydam v. Moffat, (supra,)* the position is distinctly taken, that if the defendant honestly supposed the declarations to have been relevant to the proceeding, he is shielded from action. Chief-Justice Tilghman expressed the same idea, by saying that, "if a man should abuse his privilege, and *designedly wander* from the point in question, and maliciously heap slander upon his adversary, he would not say that he was not responsible in an action at law."—*McMillan v. Birch*, 1 Bin. 178; *Ring v. Wheeler, supra.*

Lest the generality of the expressions quoted should mislead, we close our observations upon this point by remarking, that the defendant is not absolutely shielded by the single fact of his believing the matter to be relevant; but, to entitle him to be thus shielded, there must be also reasonable or probable cause for so believing. In the absence of reasonable or probable cause, his belief of the relevancy would be a matter of fact to be weighed by the jury in determining the question of malice. The grossness or obviousness of the irrelevancy is a matter to be weighed by the jury, in determining the question of reasonable or probable cause, in like manner as in determining the question of malice. We deem it proper further to distinctly announce, as another result of our investigations, that words spoken in the course of judicial proceedings, although irrelevant, are not actionable, unless it affirmatively appears that they were malicious, and without reasonable or probable cause.

[2.] Guided by the principles which we have stated, we decide, that the plaintiff's amended complaint would be good, and that the demurrer to it would be properly overruled, if it contained the averment of a want of reasonable or probable cause. It avers the want of *"justifiable* cause

or excuse." This averment is not equivalent to that which the law requires.

[3–4.] The defendant's first special plea was also a valid defense to the action; but we would not reverse for the error of sustaining a demurrer to it, as the defense it sets forth was available under the general issue.—*Hastings v. Lusk, supra; Suydam v. Moffat, supra;* 1 Saunders on Pl. & Ev. 801; Starkie on Slander, 455; Cooke on Def. 107.

[5.] The defendant's second special plea was bad. It proceeds upon the erroneous supposition, that the mere reading of cross-interrogatories and the answers to them in evidence is proof, in a subsequent cause between the same parties, that they were relevant. Whatever might be the effect of a decision that they were relevant, a legal conclusion of relevancy cannot be drawn from the mere fact of reading in evidence.

The third special plea was bad, as is apparent from a comparison of it with the principles hereinbefore laid down.

[6.] The fact that the cross-interrogatories, signed by the defendant, and in his handwriting, were found in the clerk's office, was evidence so conducing to show a publication, that the court might with propriety admit them in evidence, and leave the question of publication to the jury.

[7.] The defendant having proved by a witness a declaration of the plaintiff, to rebut this evidence, and to impeach the defendant's witness, the plaintiff was permitted to prove, by another witness, that he had been intimate with the plaintiff for fifteen years, and had never been told any such thing by him. In admitting this evidence, the court erred. It has been decided in this State that, "when the situation of a witness is such that, if a fact had existed, he would probably have known it, his want of knowledge is some evidence, though slight, that it did not exist." *Blakey v. Blakey,* 33 Ala. 611. The reason of this principle does not sustain the ruling of the court below, in permitting a witness to state, in general terms, that he had not at any time heard the party utter a declaration proved by another witness. The general rule, to which the point

presented is no exception, is, that a party cannot make evidence for himself, either by his conduct or declarations. *Chaney v. State*, 31 Ala. 342 ; *Bradford v. Edwards*, 32 Ala. 628.

As the judgment of the court below must be reversed for reasons already stated, and the principles we have laid down cover the real and important questions of the case, we decline to further swell this opinion.

Reversed and remanded.