Myers v. Hodges—Syllabus.

53    197
c55   336

53    197
f58   178.

WILLIAM B. MYERS, PLAINTIFF IN ERROR, v. FREEMAN S. HODGES, DEFENDANT IN ERROR.

1.  In order that defamatory words, published by parties, counsel or witnesses in the due course of a judicial procedure may be absolutely privileged they must be connected with, or relevant or material to the cause in hand or subject of inquiry. If they be so published and are so relevant or pertinent to he subject of inquiry, no action will lie therefor, however false or malicious they. in fact be.

2.  Defamatory words published in the due course of a judicial procedure, and not relevant or pertinent to the subject of inquiry, are conditionally or qualifiedly privileged—that is *prima facie* privileged. If the publications be irrelevant, they do not necessarily become actionable. They must be malicious as well as irrelevant.

3.  If it appear upon the trial that the libelous allegations were published in the due course of legal procedure, though it be proved, that the allegations were not pertinent to the legal procedure, still the law does not presume malice on the part of the defendant; but the plaintiff must prove express malice, to entitle him to recover. The simple fact that the libelous matters were published in the due course of legal procedure, though the libelous matters were impertinent, rebuts the *prima facie* presumption of malice, and makes it incumbent on the plaintiff to prove express malice, the case being what is called a conditionally privileged publication.

4   In cases of conditionally privileged publications, the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail; the burden of proof is changed, and in order for the plaintiff to recover he is called upon affirmatively and expressly to show malice in the publisher. This

malice may be inferred from the language of the publication itself, or may be proven by extrinsic circumstances, but malice is not inferable from the mere fact that the statements are untrue, and the mere fact that the defendant used· strong words, and the expressions are angry and intemperate is not enough to show malice.

5. Where the circumstances of the publication are controverted or uncertain, the court should instruct the jury what condition of circumstances would render the publication privileged, and then leave it to the jury to determine the character of the publication and give verdict accordingly. The facts being uncontroverted, the court is to determine whether or not the publication is privileged. If the publication be absolutely privileged, that determines the action. If the publication be conditionally privileged, then it is a matter of law for the court to determine whether there is any intrinsic or extrinsic evidence of malice. If there is no such evidence, it is proper ·for the court to direct a verdict to the defendant. If there is any intrinsic or extrinsic evidence of malice, it then becomes the du y of the court to submit the question of malice to the jury, with appropriate instructions.

6. On a demurrer to the evidence properly framed, and joinder in demurrer, the usual course is immediately to discharge the jury of the issue of fact, and, if the defendant prevails, by the court sustaining the demurrer, final judgment should be entered on the demurrer to the evidence, as a final judgment on demurrer to a pleading. It is not reversible error, however, for the court to direct the jury to find a verdict for the defendant.

This case was decided by Division B.

Writ of error to the Circuit Court for Duval county.

## STATEMENT.

The plaintiff in error, who was plaintiff in the court below, sued the defendant in error in the circuit court in and for Duval county in an action of libel. There were three counts to the declaration. The first count is as follows: *"First*: For that, whereas the plaintiff below and at the time of the committing by the defendant of the several grievances hereinafter mentioned was a person of good name, credit and reputation, and deservedly enjoyed the esteem and good opinion of his neighbors and other worthy citizens of this state; yet, the defendant, well knowing the premises, but contriving and maliciously intending to injure the plaintiff in his good name and reputation and bring him into public scandal and disgrace, and cause him to be suspected and bring him into public scandal and disgrace, and cause him to be suspected and believed by divers persons to be a tricky, dishonorable, unscrupulous and conscienceless man, to wit: the 13th day of January, A. D. 1904, in a certain bill in equity filed in the circuit court of the fourth judicial circuit of the state of Florida, in and for Duval county, said bill being signed by his solicitor and counsel, and sworn to by the said defendant, and in a clause or clauses, sentence or sentences, phrase or phrases, either or both, therein did unnecessarily and without legal excuse therefor, wickedly and maliciously compose, write, type-write and publish and cause to be composed, written typewritten and published, in the said bill, and in a suit in said court wherein the said Freeman S. Hodges, defendant herein, was complainant, and the Naval Stores Manufacturing Company, a corporation, etc., was defendant, a certain, false, scandalous, malicious and defamatory libel, containing among

other things, the false, scandalous, malicious, defamatory and libelous matter following of and concerning the plaintiff: that is to say:

'And your orator (meaning the defendant herein) thereupon instituted inquiry, and was informed and avers and charges, that the said W. B. Myers, (meaning the plaintiff herein) was and is held as a tricky, dishonorable, unscrupulous and conscienceless man; that the said W. B. Myers, (meaning the plaintiff herein) had stated in effect that he intended to do everything in his power to beat your orator (meaning the defendant herein) out of the money owing to him, short of swearing to a lie.' "

The second count is similar to the first except the allegation that defendant meant to charge plaintiff with being a tricky, dishonorable, unscrupulous and conscienceless man, and that the plaintiff would do everything in his power by tricky, dishonorable, upscrupulous and conscienceless means, to defraud the defendant or anyone else with whom he had business relations out of his or their money.

The third count alleges that plaintiff was engaged in the business of naval stores, real estate, merchant, etc., and that defendant, maliciously intending to injure him in his reputation and business published in said bill of complaint the language complained of an set up in the first count of the declaration, and that by reason of the said publication plaintiff was injured in his business. A demurrer to the declaration was overruled.

The defendant filed five pleas, the first being a plea of not guilty, and the other four being special pleas. The plaintiff demurred to and moved to strike the 2nd, 3rd, 4th and 5th pleas. The demurrer was sustained as to the

3rd, 4th and 5th pleas, and the motion to strike the 2nd plea was granted.

On the 18th day of May, 1906, a trial was had, and the evidence on behalf of the plaintiff being concluded, the defendant filed the following demurrer to the evidence of the plaintiff: "And now comes the defendant by Alex. St. Clair-Abrams and Frank Pope, his attorneys, and demurs to the evidence of the plaintiff in this cause and admits that the evidence proves that the defendant by a certain bill in chancery filed a suit in which the defendant, Freeman S. Hodges, was complainant, and the Naval Stores Manufacturing Company, a corporation of which the plaintiff, William B. Myers, was the president, was defendant, and used the following language of and concerning the plaintiff, William B. Myers: 'And your orator thereupon instituted inquiry, and was informed and avers and charges that the said W. B. Myers was and is held as a tricky, dishonorable, unscrupulous and conscienceless man; that the said W. B. Myers had stated in effect that he intended to do everything in his power to beat your orator out of the money owing to him, short of swearing to a lie."

And that said bill in chancery was duly filed by defendant's solicitor in the office of the clerk of the circuit court of Duval county, and was signed and sworn to by the defendant Hodges.

Defendant further admits that one John Pope, a clerk of Bryan and Bryan, under instruction from Bryan and Bryan, attorneys for the plaintiff, copied the bill containing the alleged defamatory matter soon after it was filed, and read the bill and the alleged defamatory words. That one D. J. Gray testified that he voluntarily read the bill in the office of Bryan and Bryan, attorneys for the

plaintiff, the said Gray being the clerk of the said Bryan and Bryan, and prepared exceptions to the alleged defamatory language by dictation of W. J. Bryan. Defendant also admits that the witness R. C. Dowling testified that he copied the bill in chancery, as soon as it was filed, at the request of John L. Doggett, one of the attorneys for the plaintiff, and read the alleged defamatory words. Defendant further admits that the plaintiff put in evidence the exceptions of plaintiff to the bill of complaint and that the alleged defamatory language was stricken out of the bill under the rule of the court. Defendant also admits that the plaintiff, W. B. Myers, testified that he is the W. B. Myers referred to in the bill of complainant; that the defendant F. S. Hodges was reported as a man of large means, and that the defendant Hodges, who was complainant in the suit of Hodges vs. Naval Stores Mfg. Co. had, on one occasion told him that he kept from sixty to eighty thousand dollars on deposit in the bank, and defendant also admits that the testimony proved that the Myers referred to in the bill of complainant was and is the plaintiff in this cause. And defendant further admits all the legal and logical deductions to be derived from the testimony. (Signed) Alex St. Clair-Abrams. Pope & Pope, Deft's Attys.

## MATTERS OF LAW TO BE ARGUED.

1. That said evidence is insufficient to sustain the plaintiff's cause of action.

2. That no legal inference of malice arises from the use of defamatory language in a pleading.

3. That, to sustain an action of libel based on defamatory language used in a pleading, it is necessary to prove

actual malice on the part of the defendant in using and publishing the defamatory language.

4. That it is not shown by the evidence that the court in which the said bill in chancery was filed had no jurisdiction of the subject-matter thereof.

5. That it is not shown by the evidence that the character of the plaintiff Myers, and his honesty, integrity and fair dealing in the matters and things set forth in the bill of chancery were not involved in the said bill of complaint, and were not proper subjects of inquiry.

6. That it is not shown by the evidence from the recital of the bill of complaint that the defendant, Freeman S. Hodges, had no reasonable ground for believing that the character of the said Myers, President of the Naval Stores Manufacturing Company, for honesty, integrity and fair dealing and good conscience were not involved in said bill of complaint.

7. That there is nothing in the evidence to show that the defendant, Freeman S. Hodges had no reasonable ground for believing that the alleged defamatory language was relative and pertinent to his bill of complaint.

8. That no proof has been offered of actual malice on the part of the defendant Hodges towards the plaintiff, Myers, in the use and publication of the alleged defamatory language in the bill in chancery filed by him as complainant.

Alex. St. Clair-Abrams, Pope & Pope, Attorneys for Plaintiff."

The plaintiff joined issue on the foregoing demurrer to the evidence. Thereupon the court sustained the demurrer to the evidence and instructed the jury to render a verdict for the defendant. A verdict was rendered accordingly. A motion for a new trial was made and overruled,

final judgment was entered for the defendant, and plaintiff seeks a reversal of this judgment by writ of error, returnable to the present term of this court.

*Bryan & Bryan* and *Jno. L. Doggett,* for Plaintiff in error;

*Alex. St-Clair Abrams,* for Defendant in error.

PARKHILL, J., (*after stating the facts*) :There are six assignments of error, as follows: 1. The court erred in sustaining defendant's demurrer to the evidence.    2. The court erred in instructing the jury to find a verdict for the defendant and against the plaintiff. 3. The verdict of the jury is contrary to the evidence.    4. The verdict of the jury is contrary to the law.    5. The court erred in entering judgment upon the verdict of the jury.    6. The court erred in denying plaintiff's motion for a new trial.

For the sake of convenience the counsel for plaintiff in error have argued all the assignments of error except the fifth, under two propositions. The first proposition submitted is that the language complained of is not privileged.

Privileged publications, as they are called by this court, are divided into two classes: absolutely privileged, and conditionally or qualifiedly privileged.  Coogler v. Rhodes, 38 Fla. 240, text 248, 21 South. Rep. 109. In the case just cited this court said : "The term absolute privilege has reference to words spoken or written in certain legislative and judicial proceedings." As the publication considered in that case did not fall under the class of absolute privilege, the court did not attempt a definition of the same.

It is contended by defendant in error that the libelous

words complained of having been used in a bill in chancery, filed in the circuit court of the fourth judicial circuit of this state, in the course of a judicial proceeding, are absolutely privileged, however false and malicious the language may be. It is urged by plaintiff in error that in order that an absolute privilege attach to the language complained of it is essential that the language must have been pertinent and material to the cause. Thus is presented for our decision for the first time a very grave and important question, involving, as it does, the rights and privileges of parties who are concerned in proceedings in the courts, and incidentally affecting the rights of counsel and witnesses also. This case has been ably argued, and we have been referred to nearly all the decisions bearing upon this subject.

In England, the law seems to be settled now that judges, counsel, parties and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings (Rice v. Coolidge, 121 Mass. 393) and it has been broadly stated that this was the rule at common law. As the common law of England, as it existed down to the fourth day of July, 1776, is declared by statute to be of force in this state, let us see what was the state of the common law prior to the time stated. The English decisions rendered prior to the war of the revolution are evidence of what the common law is; but in order to be binding upon us, these decisions must be clear and unequivocal. 6 Amer. & Eng. Ency. Law (2nd ed.) 279. One of the earliest of the leading cases on this subject was the case of Brook v. Montague, Cro. Jac. 90, decided in 1605, argued by Lord Coke and Yelverton. In that case it was held that this privilege protected counsel, provided the slanderous words

spoken were relevant or pertinent to the matter; and the law, it seems, would be the same as applied to libelous words in a pleading filed in court. In that case, POPHAM, J., said: "But matter not pertinent to the issue, or matter in question, he need not deliver, for he is to discern in his discretion what he is to deliver and what not, and although it be false, he is excusable being pertinent to the issue."

Counsel for defendant in error cite Lord Beauchamps v. Sir Richard Croft and others, 11 Eliz. Dyer, 285; Buckley v. Wood, 4 Rep. 14, Cro. Eliz. 230; and Astley v. Younge, 2 Burr. 807, decided in 1759, where it is decided that for libelous words contained in an affidavit produced in a court of justice on a defense against a charge, no action lies. The case of Hodgson v. Scarlett, 1 Barn. & Ald. 232-247, was decided in 1818, but it is valuable not only as declaring the law as the court understood it before that time, but HOLROYD, J., in a review of the above mentioned cases cited by counsel, says that no action is maintainable against a party for words spoken in the course of justice, if they be relevant to the matter in issue.

In Hodgson v. Scarlett, *supra,* the court held, that "an action for defamation will not lie against a barrister for words spoken by him as counsel in a cause pertinent to the matter in issue;" and HOLROYD, J., in expressing his opinion, said: "I apprehend that a counsel is in the same situation and under the same protection as the party himself, with this exception, perhaps, that a party from his comparative ignorance of what is, or is not relevant, may be indulged in a greater latitude, and not be restricted within the same limits as a counsel, whose superior knowledge of itself should be sufficient to restrain him within due bounds. But, strictly speaking, they stand upon the

same foundation: it may, therefore, be fit to inquire, how the parties themselves are protected. In 1st Hawkins, P. C., it is laid down, that 'no false or scandalous matter contained in a petition to a committee of parliament, or in articles of the peace exhibited to justices, or in any other proceeding in a regular course of justice, will make the complaint amount to a libel.' And in Rolle's Abridg. a case is stated in which it was holden in arrest of judgment, that an action was not maintainable where the words were spoken by the party in defence of himself, 'and in a legal and judicial way,' by which I understand that they were spoken in a court of justice; and there, too, the words were charged, and were found by the verdict for the plaintiff, to have been spoken falsely and maliciously, which makes it a very strong case. Lake v. King, (1 Saund. 130) is an authority to the same effect. In Buckley v. Wood, (4 Co. Rep. 146) the libel was contained in a bill in the star-chamber, against Sir R. Buckley, charging him with divers matters examinable in that court, and also that he was a maintainer of pirates and murderers, and it was there resolved *per totam curiam*, 'that for any matter contained in the bill that was examinable in the said court, no action lies, although the matter is merely false, because it was in the course of justice; and this agrees with the opinion in 11 Eliz. Dyer, 285, and with the judgment in Cutler v. Dixon's case (4 Co. Rep. 14), but that for the latter words, which were not examinable in the said court, an action on the case lies, for that cannot be in a course of justice.' These cases shew the privileges possessed by parties themselves; and from these authorities it appears that no action is maintainable against the party, nor consequently against the counsel who is in a similar situation, for words spoken in the

course of justice. If they be fair comments upon the evidence, and be relevant to the matter in issue, then, unless express malice be shewn, the occasion justifies them." In the same case Lord Ellenborough, Ch. J., said: "It appears to me that the words spoken were uttered in the original cause, and were relevant and pertinent to it, and consequently that this action is not maintainable." As late as 1860, in Mackay v. Ford, 5 Hurl. & N. 792, POLLOCK, C. B., referring to the slanderous matter complained of said: "The question is, was it relevant? I think it was, because it was pertinent to the question whether the agreement had been lawfully determined. The words used by the defendant acting in the character of counsel in a court of justice, and being relevant to the matter in hand, the speaking of them was justifiable." And so the great commentator BLACKSTONE, with all the early English cases before him says: "A counsel is not answerable for any matter by him spoken relative to the cause in hand. * * * If it be impertinent to the cause in hand, he is then liable to an action from the party injured." 2 Sharwood's Blackstone, 29. And on page 124 of the same authority, it is said: "Neither are any reflecting words made use of in legal proceedings and pertinent to the cause in hand, a sufficient cause of action for slander."

We need not comment upon the other English cases cited by counsel for defendant in error further than to say, that many of them were decided long after the fourth day of July, 1776, and only support the modern doctrine of privilege prevailing in that country. We do not think the rule at common law sustains the contention for an absolute privilege for defamatory words published in the due course of a judicial proceeding.

In the United States, according to the overwhelming

weight of authority, in order that defamatory words, published by parties, counsel or witnesses in the due course of a judicial procedure may be absolutely privileged they must be connected with, or relevant or material to the cause in hand or subject of injury. If they be so published and are so relevant or pertinent to the subject of injuiry, no action will lie therefor, however false or malicious they may in fact be. The following authorities sustain the rule before announced: Lawson v. Hicks, 38 Ala. 279; Jones v. Brownlee, 161 Mo. 258, 61 S. W. Rep. 795; Rice v. Coolidge, 121 Mass. 393; Johnson v. Brown, 13 West Va. 71; Lea v. White, 4 Sneed's (Tenn.) 111; Ruohs v. Backer, 6 Heisk. (Tenn.) 395, S. C. 19 Am. Rep. 598; Crockett v. McLanahan, 109 Tenn. 517, 72 S. W. Rep. 950; Cooley v. Galyon, 109 Tenn. 1, 70 S. W. Rep. 607; Gorsuch v. Swan, 109 Tenn. 36, 69 S. W. Rep. 1113, S. C. 97 Am. St. Rep. 836; Smith v. Howard, 28 Iowa 51; Railbow v. Benson, 71 Iowa 301, 32 N. W. Rep. 352; Barnes v. McCrate, 32 Me. 442; Kidder v. Parkhurst, 3 Allen (Mass.) 393; Hoar v. Wood, 3 Met. (Mass.) 193; McLaughlin v. Cowley, 127 Mass. 316; Watson v. Moore, 2 Cush. (Mass.) 133; Hollis v. Meux, 69 Cal. 625, 11 Pac. Rep. 248, S. C. 58 Am. Rep. 574; Wyatt v. Buell, 47 Cal. 624; Clemmons v. Danforth, 67 Vt. 617, 32 Atl. Rep. 626, S. C. 48 Am. St. Rep. 836; White v. Carroll, 42 N. Y. 161; Moore v. Manufacturers' Nat. Bank of Troy, 123 N. Y. 420, 25 N. E. Rep. 1048; March v. Elsworth, 36 Howard Prac. (N. Y.) 532; 50 N. Y. 309; Garr v. Selden, 4 N. Y. 91; Perkins v. Mitchell, 31 Barb (N. Y.) 461; Nissen v. Cramer, 104 N. C. 574, 10 S. E. Rep. 676; Forbes v. Johnson, 11 B. Mon. (Ky.) 48; Monroe v. Davis, 118 Ky. 806, 82 S. W. Rep. 450; Hyde v. McCabe, 100 Mo. 412, 13 S.

14—S C

W. Rep. 875; Lauder v. Jones, 13 N. Dak. 525, 101 N. W. Rep. 907; Sherwood v. Powell, 61 Minn 479, 63 N. W. Rep. 1103; Liles v. Gaster, 42 Ohio St., 631; Lanning v. Christy, 30 Ohio St. 115; Calkins v. Summer, 13 Wis. 193; Jennings v. Paine, 4 Wis. 358; McMillan v. Birch, 1 Binney (Pa.) 178, and note to same case in 2 Am. Dec. 431; Neeb v. Hope, 111 Pa. St. 145, 2 Atl. Rep. 568; Hill v. Miles, 9 N. H. 9; Craig v. Burris, 4 Penn. (Del.) 156, 55 Atl. Rep. 353; Maulsby v. Reifsnider, 69 Md. 143, 14 Atl. Rep. 505; Bartlett v. Christhilf, 69 Md. 219, 14 Atl. Rep. 518; Hunckel v. Voneiff, 69 Md. 179, 14 Atl. Rep. 500; 17 Atl. 1056; Jones v. Forehand, 89 Ga. 520, 16 S. E. Rep. 262; Union Mut. Life Ins. Co. v. Thomas, 83 Fed. Rep. 803, 28 C. C. A. 96; King v. McKissick, 126 Fed. Rep. 215. We hold this to be the true rule. In coming to this conclusion we are not unmindful of the weighty reasons advanced in favor of the English doctrine of absolute privilege for defamatory words published in the course of judicial proceedings; that it is to the interest of the public that great freedom should be allowed in complaints and allegations with a view to have them inquired into, and that parties and counsel should be indulged with great latitude in the freedom of speech in the conduct of their causes in courts and in asserting their rights, because in this way the purposes of justice will be subserved, and the court can and will protect the party aggrieved by expunging, irrelevant defamatory matter from the pleadings, and by punishing for contempt of court the guilty party. We think the ends of justice will be effectually accomplished by not extending the privileges so far as to make it an absolute exemption from liability for defamatory words wholly and entirely outside of, and having no connection with, the matter of inquiry. For why should a

person be absolutely privileges to defame another in the course of a judicial proceeding by making slanderous statements wholly outside of the inquiry before the court? We think it unnecessary to carry the doctrine so far. The ends of justice can be effectually accomplished by placing a limit upon the part of counsel who avails himself of his situation to gratify private malice by uttering slanderous expressions and making libelous statements, which have no relation to or connection with the cause in hand or the subject-matter of inquiry. The person whose good name suffers has, or ought to have, the right to vindicate his reputation by an appeal to the courts, instead of taking the law into his own hands. The law would be a vain thing indeed to shut the gates of justice in his face, and at the same time fetter his hands by the command, 'thou shalt not kill.' The person accused may have suffered great financial loss by the slander published under the protection of the law, and the only compensation or consolation he would have would be the indulgence in the reflection that the court had enriched the public treasury with a fine collected from his defamer.

In determining what is pertinent, however, much latitude must be allowed to the judgment and discretion of those who maintain a cause in court. Much allowance should be made for the earnest though mistaken zeal of a litigant who seeks to redress his wrongs and for the ardent and excited feelings of the fearless, conscientious lawyer, who must necessarily make his client's cause his own. We should be careful not to go to the other extreme, and say that there shall be no privilege—not even a qualified privilege—for defamatory words published in the course of judicial procedure. We believe the true doctrine to be, as declared by the supreme court of our neighbor-

ing state of Alabama, in the case of Lawson v. Hicks, 38 Ala. 279: "Words, spoken or written, in the course of a judicial proceeding by the parties, or the counsel, if relevant will not support an action for defamation; nor when irrelevant, if the speaker or writer believed that they were relevant, and had reasonable or probable cause so to believe; nor in any case, without proof of actual malice."

Defamatory words published in the course of a judicial procedure and not relevant or pertinent to the subject of inquiry, are qualifiedly privileged—that is *prima facie* privileged. As said by the court in Lawson v. Hicks, *supra*: "If the communications be irrelevant, they do not necessarily become actionable. They must be malicious as well as irrelevant. Because they were uttered in the course of judicial proceedings, the law does not draw the inference of malice from their injurious character, but requires from the complainant party proof of actual malice. * * * The communications of counsel and parties made in the due course of judicial proceeding, are, therefore, not only absolutely privileged when relevant, but cannot constitute a cause of action, although irrelevant, unless they are in fact malicious." Upon this point, the supreme court of Wisconsin, in Calkins v. Sumner, 13 Wis. 193, said: "And although where the words used are actionable in themselves, the law ordinarily implies malice from the act of speaking or writing them, and distinct proof of malice is not required; yet when they are written or spoken by parties, counsel, witnesses, jurors or judges, in the course of a judicial proceeding, they are *prima facie* privileged. The circumstances under which they are thus spoken or written exclude the legal notion of malice, and it lies with the party complaining

to establish that they were not pertinent or material to the subject in controversy, *and* that the speaker or writer was animated by ill-will and hatred. This principle is vindicated by the adjudications upon the subject, and is consistent with reason. For it would be extremely inconsistent, and I might say absurd, for the law to presume that judicial proceedings of any kind are resorted to for the mere purpose of enabling parties to indulge their malice and utter slanders, and not in good faith, to attain some legitimate end, or to perform some lawful act or duty, which is useful and beneficial to themselves or others. On the contrary, the presumption is very strong, that persons so situated are using legal proceedings for proper purposes, and that what is said or done proceeds from sufficient cause and right motives; and when that which thus transpires may constitute the basis of an action at all, it is only upon the ground that there is proof of express malice, and that the person complained of has availed himself of his position to gratify his malevolence by defamatory expressions against the parties or others, which have no connection with or bearing upon the subject under investigation." In Johnson v. Brown, 13 W. Va. 71, 5th head-note, it is said: "If a declaration on its face shows, that the libelous matters complained of were published in the due course of legal proceedings, it will be held fatally defective on general demurrer, unless it further shows, that the libelous matters complained of are not absolutely privileged publications under the general rule, that all such publications are so privileged, by allowing facts that bring it within some exceptions to this general rule, such as, that the court had no jurisdiction, or that the libelous matters alleged were not pertinent to such judicial procedure." And the West Virginia court

goes on further to say, 9th head-note, "And upon the trial on such issue if it appear that the libelous allegations were published in the due course of legal procedure, *though it be proved, that the court had no jurisdiction, or that the allegations were not pertinent to the legal procedure,* still the law does not presume malice on the part of the defendant; but the plaintiff must prove express malice to entitle him to recover. The *simple fact,* that the libelous matters were *published in the course of legal procedure,* though the court had no jurisdiction, or the libelous matters were impertinent, rebuts the prima facie presumption of malice, and makes it incumbent on the plaintiff to prove express malice, the case being what is called a conditionally privileged publication." See also, Sands v. Robinson, 12 Smedes & M. 704, S. C. 51 Amer. Dec. 132; Liles v. Gaster, 42 Ohio St. 631; Dada v. Piper, 41 Hun. 254. This court has laid down the same rule as to the burden of proof. In Coogler v. Rhodes, 38 Fla. 240, text 249, 21 South. Rep. 109, the court said: "In cases of qualified privileged publications the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail; the burden of proof is changed, and in order for the plaintiff to recover he is called upon affirmatively and expressly to show malice in the publisher."

With these principles in view, let us consider the action of the trial judge in sustaining the demurrer to the evidence in this case. By demurring to the evidence and joining therein in a proper case, the duty devolves upon the court to apply the law applicable to the case to the evidence, and this consists of every fact that the testimony reasonably conduces to prove, or that a jury might fairly and legally draw therefrom. The law applicable to the case is for the court to determine under all conditions, and

its duty in this respect is not altered by the demurrer to the evidence and the imposition of the further duty of applying the law to the facts admitted. Wilkinson v. Pensacola & A. R. Co., 35 Fla. 82, 17 South. Rep. 71. Turning then to the demurrer to the evidence, we find that the defendant, Hodges, by a bill in chancery filed a suit in which he was complainant and the Naval Stores Manufacturing Company, a corporation, of which William B. Myers was the president, was defendant, and in said bill used, of and concerning the said Myers, the libelous language complained of, that the said bill in chancery was duly filed in the office of the clerk of the circuit court for Duval county, and was signed and sworn to by Hodges, the defendant in the instant case, that the defamatory language was stricken out of the bill, as being impertinent, irrelevant, immaterial and scandalous, and that the said bill and the defamatory words were read by three different law clerks at request of counsel for plaintiff. Here the plaintiff's evidence made it to appear that the defamatory matter was published in the due course of a judicial proceeding, and that this matter was a privileged—not an absolutely, but a qualifiedly privileged publication; because the plaintiff's evidence showed, also, that the defamatory matter was not material or pertinent to the subject of inquiry. The defamatory words here complained of being a qualifiedly privileged publication, in order for the plaintiff to have maintained his action therefor, he must have proved express malice on the part of the defendant. It seems to be conceded by all that the circuit court had jurisdiction of the cause, wherein the libelous language was used, at least no point is made on the jurisdiction of the court.

In coming to this conclusion, we have not overlooked

the contention of counsel for plaintiff in error, that "the language complained of appeared in the bill of complaint in which the plaintiff in this suit was not a party, he was a stranger to it," and that "the only connection he had with that suit was as an officer of the corporation defendant." It affirmatively appears in the demurrer to the evidence that the plaintiff, Myers, was the president of the defendant corporation in the chancery suit. He was not a stranger to the suit against his corporation. As president he was the agent of the corporation. 10 Cyc. 903. In the case of Nissen v. Cramer, 104 N. C. 574, text 578, 10 S. E. Rep. 676, the supreme court of North Carolina said: "There can be no doubt that, as acknowledged agent of a defendant corporation, he enjoyed all the privileges of an actual party." Counsel contended further, that "no privilege to defendant appeared from the evidence introduced. On the contrary it appears that the language complained of was, upon exception, stricken out by the chancellor on the ground of scandal and impertinence." We have already shown that the language complained of is not actionable unless the plaintiff proved express malice. Without proof of malice, they would not be actionable because they were expunged from the bill of complaint. Ogden's Slander and Libel, side page 192.

II. Does the evidence, then, show that the words were published maliciously? The answer to this question brings us to consider the second proposition submitted by plaintiff in error "that if the language is privileged so as to cast upon the plaintiff the burden of proving express malice, express malice has been proved." The argument is made that express malice has been shown from the words used by the defendant in his bill of complaint, and complained of in the declaration, that, under the admitted

facts, it was a question for the jury to determine whether there was malice, and that the court invaded the province of the jury when it held, as a matter of law, that the language used did not show express malice in and of itself. In Coogler v. Rhodes, *supra,* this court said: "This malice may be inferred from the language itself, or may be proved by extrinsic circumstances. While the malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue. The existence or non-existence of such malice, *where the facts are controverted* and there is evidence upon the subject, is a question for a jury. That which would otherwise be a qualifiedly privileged publication is not so if the publisher is actuated by malice." This court in that case cites Townsend on Slander and Libel. In Townsend on Slander and Libel, (4th ed.) Sec. 287, page 512, we find the law stated thus: "Where the circumstances of the publication are controverted or uncertain, a case is presented in which the court is to instruct the jury what condition of circumstances would render the publication privileged, and then leave it to the jury to determine the character of the publication and give verdict accordingly. For the jury cannot decide whether a libel was published on a justifiable occasion, without being told by the court what facts would constitute such an occasion. The uncertainty as to the facts may consist in the happening or not happening of certain events, or in the question whether or not the language exceeded the privileged limits." Section 288, in the same authority, is as follows: "The facts being uncontroverted, *the court* is to determine whether or not the publication is privileged. * * * If the court decides that the publica-

tion is absolutely privileged, that of course determines the action; if the court decides the publication is conditionally privileged then it is a matter of law for the court to determine whether there is any *intrinsic* or *extrinsic* evidence of malice. If the court decides this question in the negative, it directs a nonsuit or a verdict for the defendant, without reference to the jury. But if the court decides there is any evidence in the language of the publication itself (intrinsic evidence), or in the circumstances of its publication, from which a want of good faith or a bad intent (malice) on the part of the publisher may be inferred, it then becomes the duty of the court to submit to the jury, with appropriate instructions, and as a question of fact for their determination, whether in making the publication the publisher acted in good faith or otherwise; for the question of malice in such a case is always a question of fact to be determined by the jury."

In the instant case, the facts were not controverted. The defendant demurred to the evidence, and the plaintiff joined in the demurrer. The court decided there was no intrinsic or extrinsic evidence of malice, sustained the demurrer to the evidence and directed a verdict for the defendant. On the evidence as we find it, we cannot say the court erred in its decision on the question of proof of malice. It is argued that the evidence shows the defendant's admission that the language used concerning the plaintiff was absolutely false. In Coogler v. Rhodes, *supra,* we said that while malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue. It is argued that there was evidence of malice because the plaintiff was not a party to defendant's bill of complaint; and that the court held in the chancery suit that the language used was scandal-

ous, and was stricken out. We have disposed of these contentions adversely to plaintiff in error. The circumstances attending the publication of the libelous matter, if in law there was a publication, do not show malice. The bill of complaint, in which the libelous words appear was directed to the court, filed in the office of the clerk of the circuit court, and those who read the defamatory words were three persons, all of whom were law clerks of counsel in the libel suit. There does not seem to be here any *extrinsic* evidence of malice. The question of malice, then, must depend upon intrinsic evidence, arising from the sole publication of the defamatory words.

The case of Kent v. Bongartz, 15 R. I. 72, 22 Atl. Rep. 1023, is very like the instant case on this point. The defamatory words conplained of in that case were published in a petition addressed to the town council. In part they were as follows: "That said Kent is a man utterly devoid of principle, and uses his office more for the purpose of wreaking his personal spite than for the peace and harmony of the community." It is unnecessary to quote more. At the conclusion of the plaintiff's testimony, the defendants moved for a non-suit, which is the same as a demurrer to the evidence, on the ground that the petition was a privileged communication, and that the plaintiff could not maintain his action thereon without proof of express malice. The court granted the motion, and the. plaintiff excepted. The plaintiff contended that the question of malice is a question of fact for the jury, and that if the case had been left to the jury, there was evidence from which they might have found express malice, namely the grossness of the charges and the testimony to their falsity. The court quoting from Hart v. Gumpach, L. R. 4 P. C. 439 said: "It is no doubt true that malice may in

some cases be inferred from the defamatory statements themselves, but where representations, if bona fide, are privileged by the occasion, the mere circumstance that they are defamatory does not furnish that proof. It must be shown, either from the nature of the language employed or by extrinsic evidence that they were prompted by bad feeling or wrong motives, and it is not sufficient in such cases that the representations are consistent with the existence of malice; they must be inconsistent with *bona fides* and honesty of purpose. * * * We do not think the charges here complained of are of such a character that a jury, without other proof, would be justified in finding them malicious. They are severe in substance but concise in expression. * * * It is as consistent on the fact of it with good faith as with malice, and therefore, under the rule laid down in the cases above referred to, it was for the plaintiff to show by extrinsic evidence not only that the charges were false, but also that the defendants had no probable cause for believing them to be true, or that they acted without sincerity, using the occasion as a mask for personal spite and ill will."

We have carefully examined the authorities cited by counsel to sustain the contention that "under the admitted facts it was a question for the jury to determine whether there was malice." It is conceded by counsel that there is no *extrinsic* evidence of malice on the part of the defendant; but that the question of malice should have been left to the jury on the intrinsic evidence afforded by the libelous charge itself. In Conroy v. Pittsburgh Times, 139 Pa. St. 334, 21 Atl. Rep. 154; cited by counsel, the court, speaking of the evidence of malice where the publication belongs to the class of qualified privilege, said: "There is no *prima facie* presumption of malice from publication.

There must be some evidence beyond the mere fact of publication, but there is no requirement as to what the form of the evidence shall be. It may be intrinsic from the style and tone of the article. If the communication contains expressions which exceed the limits of privilege, such expressions are evidence of malice and the case shall be given to the jury;" and we think that court states the law correctly. But how could the jury know, from plaintiff's evidence in the instant case, whether the defamatory matter exceeded the limits of privilege? The jury could not judge of the style and tone of the publication, because the entire bill of complaint, which is the publication complained of as containing the defamatory matter, was not put in evidence, neither was it set out in the declaration.

We agree with the statement of the law in Atwill v. Mackintosh, 120 Mass. 177, cited by counsel: "The jury may draw the inference of malice not only from extrinsic facts, * * * but also from the terms on which the communication was made. If those terms were in manifest excess of the occasion; if they contain strictures on motives and conduct not warranted by the facts; or if they go beyond what is reasonable in imputing crime; all these circumstances would tend to show malice."

Another case cited by counsel is White v. Nicholls, 3 Howard (U. S.) 266, 11 Lawyer's Ed. 591. In that case, the entire publication containing the defamatory matter was offered in evidence, and the plaintiff offered in connection therewith, evidence to prove express malice and the want of probable cause in the defendants in the writing of the paper, and that the same was written, not for the purpose of claiming redress for a grievance in the conduct of a public officer, but maliciously and from private pique and resentment. The circuit court excluded this

evidence as well as the publication offered in evidence. The supreme court held that the question of malice is to be submitted to the jury upon the face of the libel or publication itself. This is not in conflict with the 9th headnote in Coogler v. Rhodes, 38 Fla. 240, 21 South. Rep. 109: "In cases of qualified privileged publication, the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail. The burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher. The malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While malice may be inferred from the publication itself, it is not inferable from the mere fact that the statements are untrue. The existence or non-existence of malice, where the facts are controverted, is a question of fact for the jury." See also Abraham v. Baldwin, 52 Fla. 151, 42 South. Rep. 591. As stated by Newel, 340, the mere fact that the defendant used strong words, and the expression are angry and intermperate is not enough; the proof must go further and show that they are malicious.

In the instant case, how could the court or jury know from evidence of plaintiff that the terms of the publication or bill of complaint were in manifest excess of the occasion, or went beyond what was reasonable in imputing crime, or contained strictures on motives and conduct not warranted by the facts? The plaintiff failed to show these facts to the jury. The plaintiff did not show by an exhibition of the entire bill of complaint or otherwise the occasion for the use of the defamatory matter so that the court or jury could see whether the defamatory matter was in excess of the occasion, or went beyond what

was reasonable in imputing crime or contained strictures on motives and conduct not warranted by the facts. The facts showing the occasion of the use of the defamatory matter were not given in evidence.

As we have seen, where the matter complained of is qualifiedly privileged the burden of proving malice lies on the plaintiff, and if the evidence adduced is equally consistent with either the existence or non-existence of malice, there can be no recovery, for there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged publication. Newell on Slander and Libel, sections 23, 24.

The burden of proving malice, being on the plaintiff, who relied only upon the intrinsic evidence of malice arising from the violence of defendant's language, it became incumbent upon the plaintiff to show by the entire bill of complaint or some other competent evidence, that the defamatory matter was in excess of the occasion, or inconsistent with the non-existence of malice. The plaintiff, however, failed to make this proof, and the evidence being demurred to, the court properly sustained the demurrer to the evidence, as there was nothing to rebut the presumption which arose in favor of the defendant from the qualifiedly privileged publication.

In view of the conclusions reached by us it will not be necessary to decide the question raised by counsel for defendant in error, that the filing of a pleading in court, read only by the law clerks of counsel for the purpose of copying same, is not such a publication as will warrant an action for libel. Suffice it to say that we have assumed, only for the purpose of this case, that there was a sufficient publication of the defamatory words.

III. The fifth assignment of error is that the court erred

in entering judgment upon verdict of the jury. It is argued that the verdict should have been entered upon the demurrer to the evidence, and the case withdrawn from the jury.

Upon sustaining the demurrer to the evidence, the court, without the submission of further testimony, directed the jury to find a verdict for the defendant, which was done, and judgment was entered upon the verdict. The court did not render judgment upon the demurrer. Demurring to the evidence is of ancient English origin, and is but seldom resorted to, though the practice prevails in this state. The more modern and less technical procedure in taking cases from the jury is by motion, by ordering nonsuits and directing verdicts. Gould on Pleading, 459; 2 Thompson on Trials, Sec. 2267. On a demurrer to the evidence properly framed, and joinder in demurrer, the usual course is immediately to discharge the jury of the issue of fact, and if the plaintiff prevails on the demurrer, the writ of injury of damages is executed afterwards. Gould on Pleading, 469; Hanover Fire Ins. Co. v. Lewis, 23 Fla. 193, 1 South. Rep. 863. If the defendant prevails, by the court sustaining the demurrer to the evidence, final judgment should be entered on the demurrer to the evidence, as a final judgment on demurrer to a pleading. In this State, however, it is provided by statute that, "upon the conclusion of the argument of counsel in any civil case, after all the evidence shall have been submitted, if it be apparent to the judge of the circuit court or county court that no evidence has been submitted upon which the jury could lawfully find a verdict for one party, the judge may direct the jury to find a verdict for the other party." Sec. 1496, General Statutes of 1906, section 1088, Revised Statutes of 1892. The transcript of the

record recites that "the said parties having concluded and submitted their evidence, the court thereupon directed the jury to render a verdict for the defendant and against the plaintiff." The effect of sustaining the demurrer was a finding by the court that no evidence has been submitted upon which the jury could lawfully find a verdict for the plaintiff; and under the statute referred to, it was not reversible error for the court to direct a verdict for the defendant after sustaining the demurrer to the evidence. The effect of the peremptory instruction to the jury to return a verdict for the defendant was the same as a demurrer to the evidence under the ancient practice. 2. Thompson on Trials, Sec 2267. In Missouri where there is no evidence to support a verdict, the court gives an instruction for defendant by way of a demurrer to the evidence. Charles v. Patch, 87 Mo. 451.

Finding no error the judgment is affirmed.

TAYLOR and HOCKER, JJ., concur.

SHACKLEFORD, C. J., and WHITFIELD, JJ., concur in the opinion.

COCKRELL, J., dissents.