144 So.2d 99 (1962)
H.M. FIORE, Appellant,
v.
Albert L. ROGERO, Appellee.
No. 2972.
District Court of Appeal of Florida. Second District.
August 31, 1962.
*100 I.R. Ludacer of Harkavy, Doyle, Feigin, Hasson & Ludacer, Sarasota, and Frank Schaub, Bradenton, for appellant.
Barry V. Forde of Wightman, Rowe & Tanney, Clearwater, for appellee.
SHANNON, Chief Judge.
By this appeal, plaintiff below seeks a review of a final judgment dismissing his second amended complaint. The complaint was framed in two counts. Count one alleged slander per se and count two, slander per quod, asserting specific elements of damage.
The essential portions of the first count of the complaint read:
"2. On or about October 28th, 1960, in Pinellas County, Florida, the defendant, ALBERT L. ROGERO, a resident of Pinellas County, Florida did maliciously and falsely state to AL HUTCHINSON and MARTIN WALDRON, two reporters in the employ of the Tampa Tribune that plaintiff was `just about the most dishonest person I know' and that the Lee County News was `nothing more than a scandal sheet.'
"3. On or about November 18th, 1960, in Pinellas County, Florida, the defendant, stated to Jerry Blizen, a reporter in the employ of the St. Petersburg Times, in reference to the plaintiff, `that foul-mouthed Fiore.'
"4. On or about October 28, 1960, in Pinellas County, Florida, the defendant told Alan Hopkins, a newspaper reporter in the employ of the St. Petersburg Evening Independent, that the plaintiff was `dishonest' in giving testimony before the Florida Legislature's Interim Roads Committee.
"5. On each of the aforesaid occasions the defendant knew that the men he spoke to were reporters and that his statements would be publicized in the newspapers they represented.
"6. On October 28th, 1960, the statements set forth in paragraph two were published in the Tampa Tribune, the statement set forth in paragraph four was published in the October 28th, 1960, edition of the St. Petersburg Independent. Each of these newspapers are metropolitan newspapers having wide circulation and in each of these newspapers the defendant's above described remarks were given prominent display as defendant realized they would be.

*101 "7. Although the defendant knew or should have known that the plaintiff was not a dishonest person, did not have a foul mouth and that the Lee County News was not a scandal sheet, he maliciously and wantonly sought to defame and injure plaintiff, his reputation and his business and occupations by defaming plaintiff by both direct statements and imputation.
"8. On and before the 1st day of December, 1960, the defendant, ALBERT L. ROGERO, requested to give testimony to the Florida Legislature's Interim Committee on Roads. Although the defendant had not been subpoened [sic] or requested to give any testimony before said committee he voluntarily appeared with his counsel at the meeting of said committee held in the Hillsborough County Courthouse in Tampa, Florida, on December 1st, 1960, and through his counsel made repeated and continual demands to testify at the hearing being held at such time and place by said committee.
"9. Defendant knew that said hearing was being broadcast over local television and should have realized that there would be a large television audience and the testimony presented was being reported by the major newspapers of the State of Florida and various press associations.
* * * * * *
"11. Defendant knew at the time he made these statements that they were false. He knew that plaintiff had not committed perjury on October 27th, 1960 and he knew that not only had the plaintiff never attempted to bribe the defendant but that the meeting he related having with the defendant never occurred.
"12. Both of the foregoing statements and accusations contained therein were made willfully and wantonly by the defendant for the purpose of causing injury and damage to plaintiff.
* * * * * *
"15. Each of these aforesaid statements of the Defendant were broadcast to a large television listening audience and were published in many newspapers with large circulations.
* * * * * *
"17. As the direct and proximate result of defendant's aforesaid action and willful intentions, plaintiff has suffered disgrace, ridicule, contempt, mental suffering, anguish, injury to his reputation, professional standing and personal and public humiliation."
The complaint went on to allege that defendant, in his statements before the legislative committee, had falsely charged plaintiff with perjury before the committee and, further, that plaintiff had attempted to bribe defendant on an earlier occasion concerning the alignment of a certain road.
Defendant's motion to dismiss the second amended complaint for failure to state a cause of action was granted and upon plaintiff's refusal to plead further, final judgment was entered in favor of defendant. This appeal followed.
Drawn into focus by this appeal is the question whether or not the judge below erred in ruling that the aforementioned complaint failed to state a cause of action. Plaintiff-appellant maintains first that his allegations of publication of a slander were sufficient to state a cause of action; and secondly, that his allegations regarding the absence of an absolute privilege in regards to defendant-appellee's testimony before the legislative committee were sufficient to withstand motion to dismiss.
In order to maintain an action for the utterance of slanderous matter, communication or publication thereof to a third person must be alleged and proved. Gelhaus v. Eastern Air Lines, C.A. 5, 1952, 194 F.2d 774; McClellan v. L'Engle, 1917, 74 Fla. 581, 77 So. 270. This allegation is necessary to withstand a motion to dismiss a complaint bottomed in libel or slander for the reason that the very nature of the action is *102 based on injury to reputation or to character. Publication is sufficiently accomplished, however, by the communication of the slander to only one person other than the person defamed. See Burnham v. State, 1896, 37 Fla. 327, 20 So. 548; 20 Fla.Jur., Libel and Slander, Secs. 45, et seq; and 33 Am.Jur., Libel and Slander, Sec. 90. The complaint in the instant litigation alleges that the complained of statements were made to certain newspaper reporters and that they subsequently appeared in print in the newspapers. We hold, then, that the complaint sufficiently alleged a publication of slanderous utterances insofar as regards the remarks made by the appellee to the newspaper reporters.
Next, we shall discuss the statements made by the appellee by way of testimony before the legislative committee. The allegations of the complaint in this regard are set out, in pertinent part, in the first portion of this opinion.
Testimony given before a legislative body or a committee thereof, such as in the instant case, conducting an authorized investigation, is generally subject to the same rules of privilege accorded similar testimony in judicial proceedings. 33 Am.Jur., Libel and Slander, Sec. 142. The text writer goes on to state, however, that "it seems that only a conditional privilege attaches to the statements of persons who appear, without being served with a subpoena, before a legislative or quasi-legislative committee or council." The complaint under review in the instant case alleges that appellee voluntarily appeared before the legislative committee and demanded to be heard, after which the complained of remarks were made.
Although we have been unable to find a Florida case dealing with the precise question involved here, the case of Myers v. Hodges, 1907, 53 Fla. 197, 44 So. 357, dealt with the attempted assertion of an absolute privilege to defamatory matter published during the course of a judicial proceeding. Since the rules of privilege applicable to defamatory utterances in a judicial proceeding are the same with regard to legislative investigations, we feel that Myers v. Hodges, supra, is sufficiently analogous to the instant case as to warrant some discussion. In that case, the court was concerned with the use of defamatory words in a bill filed in chancery. The primary question was, of course, whether the use of these words in a judicial proceeding were absolutely privileged. In the course of its opinion, the court stated:
"In the United States, according to the overwhelming weight of authority, in order that defamatory words, published by parties, counsel, or witnesses in the due course of a judicial procedure, may be absolutely privileged, they must be connected with, or relevant or material to, the cause in hand or subject of inquiry. If they be so published and are so relevant or pertinent to the subject of inquiry, no action will lie therefor, however false or malicious they may in fact be. * * * The ends of justice can be effectually accomplished by placing a limit upon the party or counsel who avails himself of his situation to gratify private malice by uttering slanderous expressions and making libelous statements, which have no relation to, or connection with, the cause in hand or the subject-matter of inquiry. The person whose good name suffers has, or ought to have, the right to vindicate his reputation by an appeal to the courts, instead of taking the law into his own hands. * * *
"Defamatory words published in the course of a judicial procedure, and not relevant or pertinent to the subject of inquiry, are qualifiedly privileged; that is, prima facie privileged. As said by the court in Lawson v. Hicks, supra: `If the communications be irrelevant, they do not necessarily become actionable. They must be malicious as well as irrelevant. Because they were uttered in the course of judicial proceedings, the law does not draw the inference *103 of malice from their injurious character, but requires from the complainant party proof of actual malice. * * *'"
See also, Stewart v. Codrington, 1908, 54 Fla. 327, 45 So. 809.
In Coogler v. Rhodes, 1897, 38 Fla. 240, 21 So. 109, involving libelous language in a letter to the governor about the character and qualifications of a prospective appointee to a public office, the court discussed the definitions and reasons behind the terms absolute privilege and qualified privilege:
"* * * The term `absolute privilege' has reference to words spoken or written in certain legislative and judicial proceedings. As we do not consider the publication in question as falling under this class of privilege, we will not attempt definitions of the same. Various definitions, with differing and refined shades of meaning, have been given of what constitutes a conditionally privileged publication. * * * That general definition which more clearly fits the circumstances of the present case is as follows: `Where circumstances exist, or are reasonably believed by the defendant to exist, which cast upon him the duty of making a communication to a certain other person, to whom he makes such communication in the bona fide performance of such duty.' * * * Perhaps the following is more especially applicable: `Where a person is so situated that it becomes right, in the interests of society, that he should tell to a third person certain facts, then, if he bona fide, and without malice, does tell them, it is a privileged communication.' * * * This definition is considered more exact in leaving out the word `duty,' because it is privileged in the interests of society for a man to bona fide and without malice say those things which no positive legal duty may make it obligatory upon him to say. Id. That the matter stated in accordance with above definitions with good motives, and upon reasons apparently good, should turn out to be untrue, will not render the publisher liable. * * * In cases of qualified privileged publications the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail. The burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher. This malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While the malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue. The existence or nonexistence of such malice, where the facts are controverted, and there is evidence upon the subject, is a question of fact for a jury. * * *"
See also, Abraham v. Baldwin, 1906, 52 Fla. 151, 42 So. 591, 10 L.R.A., N.S., 1051. Other Florida cases dealing with qualifiedly privileged remarks are: Abram v. Odham, Fla. 1956, 89 So.2d 334; Loeb v. Geronemus, Fla. 1953, 66 So.2d 241; Leonard v. Wilson, 1942, 150 Fla. 503, 8 So.2d 12; and State ex rel. Arnold v. Chase, 1927, 94 Fla. 1071, 114 So. 856.
An analysis of the appellant's second amended complaint, filed in the instant litigation, in light of the pronunciations contained in the foregoing authorities, convinces us that the testimony given by the appellee before the Legislative Interim Committee on Roads was qualifiedly privileged, since he appeared there voluntarily without having been subpoenaed.
Dismissal of the complaint for failure to state a cause of action was therefore erroneous.
Reversed.
KANNER and SMITH, JJ., concur.