PEARSON, Judge.
The appellants, as defendants in the trial court, suffered an adverse jury verdict for $5,000 compensatory damage and $35,-000 punitive damage in an action brought by the appellee for “slander and intentional causing of severe emotional distress.”
The factual basis for the jury verdict was as follows: Appellee went to a used car lot in Miami to purchase an automobile. On March 21 she deposited $25.00 toward the purchase of a Cadillac automobile for $3,000. The receipt received by the ap-pellee was that of “Joseph Abraham Ford Co.” On March 25 the appellee paid an additional $1,000 and received a receipt with the same name as the seller. The retail buyer’s order for the car carried the name “Abraham Used Car Co.” Appellee was rejected for credit by the bank that was to finance the balance and the salesman suggested that she ask a friend of *502 hers, who had also examined the car, to sign the papers for her. Appellee’s friend, Pedro Benitez, did not sign the purchase agreement but some unidentified person forged Mr. Benitez’ signature on the finance papers. Acting upon the forged papers, Courtesy Motor Sales, Inc., the owner of the Cadillac, transferred title of the automobile to Pedro Benitez. When Mr. Benitez received the payment book from the bank, he informed the bank that he was not the buyer and that his signature was forged. An employee of the used car lot then called the appellee to insist that the automobile be returned. i
The same employee visited appellee’s residence and informed her that she was committing a crime by failing to return the automobile and that a police pick-up order had been issued for her and the automobile. The appellee did not return the automobile. Her sister and brother-in-law, a Mr. and Mrs. Willoz, went to the used car lot in an attempt to straighten the matter out. The used car salesman repeated to them the statements about the police pick-up order that he had made to the appellee. Mr. and Mrs. Willoz returned to the appellee’s residence and told appellee of their conversation with the salesman.
Shortly after the visit from her relatives, appellee took an excessive dose of tranquillizers and lost consciousness. She awoke in a hospital. Because of the violence of her reaction, her arms had been tied down. As a result of the restriction of the use of her arms over a long period of time and the medicine that she had taken, she was confined to the hospital for several months and suffered a severe impairment in the use of one of her hands. She then instituted the instant action against the appellants and alleged:
“That the acts of the Defendants as hereinabove set forth were wanton, reckless, careless, false, malicious and were made with an utter disregard of the rights of the Plaintiff. That said imputations of defamatory words were directed against the Plaintiff and they were malicious and false and imputed the commission of the crime of larceny and of concealing mortgaged property and forgery, and that said imputations disgraced her, and degraded her reputation. That all of said charges were false, and that the same constituted a slander.”
On this appeal the appellant has presented four points. Point one urges that a verdict should have been directed for the defendant because the evidence was insufficient to establish that the automobile salesman was either the real or apparent agent of the appellants. We think that the trial judge correctly found that there was sufficient evidence to take this issue to the jury. See Watkins v. Sims, 81 Fla. 730, 88 So. 764 (1921); Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35.
Appellants’ second point claims error upon the denial of their motion for a new trial because the statements attributed to their claimed agent could not have caused severe emotional distress to a person with plaintiff’s sensibilities. It is argued that plaintiff as a professional dancer and divorcee was probably upset by other factors in her emotional life rather than the statements of the salesman. Such arguments fall peculiarly within the realm assigned to the jury under the control of the trial judge. As pointed out in Andrews v. Cardosa, Fla.App. 1957, 97 So.2d 43:
“ * * * The test is not what an Appellate Court would have decided had they tried the case, but whether or not they can say, after viewing the case, that the jury as reasonable men could not have found the verdict which they did. * * * ”
Measured by this criterion, no error has been demonstrated.
The third point urges that there was no publication of the alleged slanderous statement. We do not view this cause as one for slander, but even if such were *503 the case, the publication would be sufficient. See Fiore v. Rogero, Fla.App.1962, 144 So.2d 99. There is no evidence to support a theory that appellee and her sister and brother-in-law were co-adventurers.
Appellants’ fourth point is as follows:
“THE COURT COMMITTED REVERSIBLE ERROR BY ANSWERING AT GREAT LENGTH THE JURY’S QUESTION ON INDEMNIFICATION AND ADVISING THEM TO THE EFFECT THAT THE DEFENDANTS HAD A RIGHT OF INDEMNIFICATION AGAINST COURTESY MOTORS PURSUANT • TO THE AGREEMENT OF SALE.”
At the time of the trial the cause" was at issue upon appellee’s complaint and a general denial of all of appellee’s allegations. In addition it was at issue upon the following affirmative defense interposed by appellant :
“1. That the entire business assets of the above-named defendants, including but not limited to: New and used car and truck inventory, replacement vehicle parts, furniture and furnishings, machinery and equipment, supplies, franchise to operate a Ford Automobile Agency, etc., were sold to COURTESY MOTOR SALES, INC., said sale and transfer was consummated on the 4th day of February, 1964.
“2. That all property leases covering the premises occupied for business by the named defendants were either assigned to, or new leases executed in the name of the new purchaser, COURTESY MOTOR SALES INC., the effective date of such assignments and new leases was February 4, ■ 1964.
“3. That the defendants surrendered the premises and right to do business to COURTESY MOTOR SALES, INC., by reason of the aforesaid and the defendants have not resumed business in any form since the date of the sale and transfer of their corporate assets to COURTESY MOTOR SALES, INC., on the stated date.
“4. That because of the above-stated facts the defendants were not in business on March 25, 1964, the date stated in paragraph 6, of Plaintiff’s complaint, when the supposed cause of action arose. Therefore, the defendants had no dealing whatsoever with the plaintiff since they had discontinued business some fifty (50) days prior to Plaintiff’s alleged purchase.”
During the trial, the contract between Joseph Abraham Ford Co. and its purchaser was admitted into evidence by stipulation of the parties with no limitation as to the purpose for which the contents might be used. This contract contained a provision whereby the purchaser agreed to hold the seller harmless from all claims arising out of the seller’s use of the name “Joseph Abraham Ford Co.” Although there was no issue in the cause regarding indemnification, the specific portion of the contract whereby the purchaser, Courtesy Ford, agreed to hold the appellant, Joseph Abraham Ford Co., harmless from any claim arising out of the use of appellant’s name was read to the jury with no objection interposed. Notwithstanding the absence of any issue of indemnification in the cause, the jury, after retiring, returned to the courtroom and asked the court for instructions on the following matters:
“THE FOREMAN: One other point of information. This explanation in the sales contract where it says Courtesy Motors agrees to hold the seller harmless from all claims whatsoever arising from the use of such equipment, does this mean that the purchaser would stand good for any liabilities incurred through the use of this name?
“THE COURT: This is in effect what it states, and that is the contract, but that is not a determination that you are to make in this case.
*504 “THE FOREMAN: We felt we could not go any further in deliberating this until we established whether or not this was the right company or not.
“THE COURT: You are quite correct, and I appreciate your asking, and you are quite right to ask.
“It may be in there, and any hearing on your determination as against or in favor of. these defendants Abraham Used Car Co. and Abraham Ford, you may consider, but as to any determination among the parties in that contract, that is another matter between them, and not your concern in arriving at your verdict in this case. What it says, it says, and you can consider in whatever relevant way it may apply.
“Does that answer it or do you have one further question?
“THE FOREMAN: I have one further question, and I do not know whether it will be correct to ask the Court.
“THE COURT: You can ask it.
“THE FOREMAN: In other words, say, if we did find for the plaintiff, would then Abraham Used Car Co., would they then turn around and collect a liability or damages from the buyer?
“THE COURT: This would be up to them in their rights as they appear in the contract, but it would be a matter that would not concern you.
“I appreciate the fact that you may be reaching out to other areas that concern you, but it would not be determinative of your finding in this suit. You must base your findings here solely between the plaintiff and these two defendants, Abraham Used Car Co. and Joseph Abraham Ford Co. based on the evidence.
“Gentlemen, I thank you.
“(Thereupon, the jury retired to continue deliberating, and the following discussion took place:)
“MR. CAPUANO: The defendant will object to the explanations given by the Court to the juror’s question regarding indemnification. It is the defendants position that the Court should have instructed the jurors that indemnification should not be considered, in any event.
“THE COURT: You would be correct in your objection, if that is what I did, but I am not aware that I told them they could.
“MR. CAPUANO: Your Honor says, or said to them, that the contract says what it says. In any event, it should have been deleted, for one thing and Your Honor should have been specific or at least, I feel, more specific in advising the jurors that under no circumstances should they consider that portion of indemnification. It is just like mentioning the word insurance.
>{s if: # 5fs # *
“THE COURT: The objection is noted and overruled.
“MR. CAPUANO: I would like to move for a mistrial.
“THE COURT: Denied.”
 A reading of the colloquy leaves the distinct impression that the trial judge was faced with a difficult situation which the attorneys did not anticipate. The sum total of what the judge told the jury was that they might consider the contract but should not be concerned with the indemnity provision. It is true that the matter could have been more briefly and explicitly handled by a prepared instruction but the trial judge may not be charged with having failed to anticipate a question which the trial attorney did not anticipate. We do not think that reversible error has been demonstrated in the responses of the trial judge. See Lambert v. Higgins, Fla.1953, 63 So.2d 631; 69 So.2d 789; Crowell v. Fink, Fla.App.1964, 167 So.2d 614.
Affirmed.